No. 74.—WILLIAM NORWOOD, plaintiff in error, *vs.* JAMES DICKEY, defendant in error.

[1.] A Court of Equity has power to restrain a person from increasing the height of his mill-dam, if increasing the height of it would be productive of loss of health in the family of another person residing in the neighborhood of the mill.

In Equity, in Calhoun Superior Court. Decision by Judge PERKINS, at May Term, 1855.

William Norwood filed a bill against James Dickey, alleging that complainant was the owner of certain lots of land, and that Dickey was the owner of adjoining lots; that Dickey had erected a mill-dam upon his land, by which a large pond of water was made stagnant, and a large swamp saturated ; and that, by reason of the decaying timber and the miasma arising therefrom, the family of complainant had been made very sick the next summer after the erection of the dam; that the damage to complainant was irreparable, in money; and that the continuance of the dam was certain sickness to complainant's family, *forty in number*. The prayer was for an injunction, restraining defendant from raising the dam higher, as he threatened to do; and for a decree to abate the nuisance.

Defendant demurred, on the ground that the Court had no jurisdiction over the subject-matter, there being an adequate remedy at Law. The Court sustained the demurrer, and this decision is assigned as error.

WARREN & WARREN, for plaintiff in error.

McDOUGALD ; CARUTHERS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Did the Court below have power to entertain this bill ?

The bill has two objects in view : one to demolish the dam, the other, to prevent the dam from being raised higher. It appears, by an amendment to the bill, that the defendant was engaged in raising the dam higher.

The defendant demurred to the bill, on the ground, that the complainant had an adequate remedy at Law. The Court sustained the demurrer, and dismissed the bill. If there was any equity at all in the bill—any equity for either of the two objects it had in view, this judgment was erroneous.

The remedy at Law, which the Court below thought an ad-

equate one was, it is probable, the remedy which is given by the twenty-fourth section of the tenth division of the Penal Code.. If the remedy provided by that section of the Code *is* adequate, the Court below was right in dismissing the bill. For if, at Law, there is a remedy which is entirely adequate, whether that remedy is supplied by a Statute or by the Common Law, makes no difference. In either case, a Court of Equity has no jurisdiction. (*McGough & Crews vs. The Insurance Bank of Columbus,* 2 *Kelly,* 151.)

Is, then, the remedy given by that section of the Penal Code, an adequate one in this case? The section declares, among other things, that " any nuisance which tends to the immediate annoyance of the citizens in general, is manifestly injurious to the public- health and safety," &c. " may be abated and suppressed by the order of any two or more Justices of the Peace of the county, founded upon the verdict and opinion of twelve freeholders of the same county, who shall be summoned, sworn and empannelled for that purpose," &c. ; " Provided, always, that when the nuisance complained of is a grist-mill or šaw-mill, or other water machinery of valuable consideration, the same shall not be destroyed or abated, except upon the affidavits of two or more freeholders, before one or more of the Justices of the Inferior Court of the county," &c. " testifying that the health of the neighborhood, according to their belief and opinion, is materially injured by such mill-dam, or other obstruction," &c. ; " whereupon, it shall be the duty of such Inferior Court, as soon as practicable, to cause a Jury of twelve men to be drawn from the Jury-box, and summoned for the trial of the· cause, who, together with the said Court, shall attend at the·· court house of said county, to adjudge the case of nuisance complained of ; and both parties shall have a reasonable time allowed them to summon their witnesses, and procure their attendance." (*Prince's Dig.* 648.)

A majority of the Court feel quite confident, that in this part of the Code *is* provided an adequate remedy for as much of the case as relates to the injury caused by the dam, as that

stood before the defendant began to raise it higher. And to this opinion of the majority of the Court, I yield quite a doubt of my own. My doubt consists in this: was it the intention, in this part of the Code, to furnish a *private* remedy? The wrong to be remedied, is one "to the citizens in general," or "to the public health and safety;" or one that "tends greatly to corrupt the manners and morals of the people." And this is a *public* wrong, is it not? Could any single private man control a proceeding under this law—say dismiss the proceeding, forgive the injury, or accept for it compensation of any sort? I doubt it.

We are all equally confident, however, that the Court below had power to prevent the defendant from raising his dam any *higher*. A person in the situation of this complainant, is not bound to stand by, passively, and see a dam of this sort built, even if, after its completion, he may, at Law, have a means of its demolition. (*Coker vs. Birge*, 9 *Ga. Rep.* 425.) And therefore, he is not bound to stand by and see such a dam, when built, raised higher.

May he not prevent it from being raised higher, (will it be asked) by resorting to the remedy given by this section of the Penal Code? It is not certain that he may, I answer; for, first, there is no telling, beforehand, what length of time it will take for this remedy to be worked out; and therefore, there can be no certainty that the business of raising the dam will not have been completed long before the time has come for this prostration of the dam, by the remedy, to take place. And secondly, it is not certain that he can even resort to that remedy for such a purpose, viz: the purpose of preventing the dam from being raised higher; for before he can resort to that remedy at all, he must get the affidavits "of two or more freeholders," "testifying that the health of the neighborhood, according to their opinion and belief, is materially injured" by the mill-dam. These he may not be able to get; and he may, nevertheless, be entitled to prevent the dam from being raised higher. It is plain, that a case may exist in which a person will have the right to prevent a dam from

being made higher, although it may be that he will have no right to have the dam prostrated.

And, indeed, if he could get the affidavits, that would not be getting the verdict of the Jury. The Jury might think that the dam ought not to be made higher; and yet, think, too, that it ought not to be prostrated—might think, in short, that the dam ought not to be touched at all, either by the owner, to raise it higher, or by the neighbors, to destroy it altogether.

To abate or destroy a mill-dam, already erected, is considered, by this section, to be a grave affair: whereas, to prevent the erection or enlargement of a dam, by an order, which must, at first, be a temporary one, ("until further order,") and which will never become a permanent one if, on inquiry, it is found that it ought never to become a permanent one, is something which the section sees fit not to notice, and something which the rest of the law, i. e. which Equity regards as no great matter.

The remedy, then, furnished by this section, is one of which it cannot, with certainty, be said that it is adequate to prevent a dam from being raised higher. To prevent that from being done, is one of the objects of this bill.

We think, therefore, that to the extent of this object, there was equity in the bill; and therefore, that the bill should not have been dismissed.