## Lorenzo D. Crippen v. The People.

The defendant being found guilty on an indictment for nuisance in maintaining a mill dam, and a judgment or order thereupon entered that the said mill dam be removed, and that a writ issue to the sheriff for its removal; *Held*—

1. That such judgment or order was such a final judgment or determination as error would lie upon:

2. That the power to order such removal cannot precede, but must be exercised at the time of imposing punishment by fine or imprisonment, and form part of the same judgment; and no such punishment having been imposed, the order to remove the nuisance was erroneous:

3. But that although such judgment was erroneous, yet the errors assigned in the case being all based on decisions of the court preceding the judgment, this court will look into the errors assigned, and if any of them are sustained, will reverse the judgment on that account, and order a new trial, instead of ordering an absolute reversal for the error in the judgment itself.

Affidavits on which a motion for a new trial was based in the court below, form no part of the record, and can not be looked into in this court, for the purpose of determining whether the court erred in denying the motion.

CRIPPEN *v.* THE PEOPLE.

On the impanneling of a jury, it is irregular for counsel to put questions to the jurors called without interposing any challenge, and no error can be assigned to the action of the court ,in allowing jurors thus questioned, but not challenged, to be sworn to try the case.

A person who has formed and holds an opinion, that mill dams generally in that part of the country are nuisances, and, that all he is acquainted with are such, is not a competent juror for the trial of an indictment for nuisance in keeping up a mill dam, though he states that he is not much acquainted with the dam in question, and has not formed or expressed any opinion regarding it.

It is competent for defendant, on the trial of such indictment, to show by the cross examination of witnesses for the prosecution, that they have commenced civil suits for injury caused by the same dam, and then agreed together to suspend action in such suits, and get defendant indicted, and, in that way, procure the removal of the dam. Such evidence is admissible to show the interest of the witnesses in the public prosecution, and the influence it might have on their testimony.

It is competent for defendant, in such case, to show that former owners of the mill were indicted and tried for nuisance in keeping up the same dam, and acquitted, and that the question litigated on the former trial was whether the dam was a nuisance or not; as such acquittal is evidence that the dam was not a nuisance at that time, though not evidence that it has not since become such.

*Heard April* 11*th. Decided May* 4*th.*

Error to Branch Circuit, where defendant was indicted for causing a public nuisance, by keeping up a mill dam across the Coldwater river, at a place called Hodunk, in Girard township.

From the bill of exceptions in the case, *it* appears that when the clerk had drawn from the jury box the names, of twelve jurors, " the counsel for the defendant being asked by the court if they had any objections to any of the persons so called as jurors as aforesaid, then and there inquired of the said persons, so called as jurors, touching their indifferences between the said People and the said defendant, and as to whether or not they or any of them had formed or expressed any opinion respecting the guilt or innocence of the said defendant of the charge contained in the said indictment; and upon such inquiry one of the said persons so called as jurors stated, among other things, that he had formed, and then and there had an opinion as to whether or not mill ponds in this part of the country with which he ·was acquainted are nuisances, when the water covers a large surface, and was filled with vegeta-

ble or other filthy or decayed matter; that he knows nothing of the dam or pond in question, and has formed no opinion concerning it.

"The defendant's counsel then asked the said juror, 'what is your opinion respecting mill dams generally, in this part of the country?' To which question the counsel for the People objected; the objection was sustained by the court, and the question was not allowed' to be put; to which the counsel for the defendant then and there excepted.

"The defendant's counsel then objected to the competency of the said juror, that having formed an opinion as to whether mill dams generally in this part of the country are nuisances, he was not an indifferent person between the People and the said defendant, and ought not to be sworn as a juror in this case. Which objection the court overruled, and the said person so called was sworn, and took his seat as a juror upon the trial of said indictment; to which the counsel for the defendant then and there excepted.

"And upon calling and impanneling of the said jury, the name of Lucius Beall having been called by the clerk, the said Lucius appeared and answered to his name, and was then and there, by and on behalf of the said defendant, duly challenged for cause, and having been then and there duly sworn to answer truly such questions as should be put to him touching his competency to serve as a juror in said cause, he, the said Lucius Beall, did there and then depose and swear (amongst other things) in substance and to the effect following, to wit: That he had formed, and there and then had an opinion, that mill dams generally in this part of the country are nuisances, and create malaria, and thereby produce disease; that when the water is dammed up, and the pond covers a large surface, and is filled with vegetable and other filthy or decaying matter, it is a cause of disease; that all the mill

dams with which he is acquainted he believes to be nuisances, and that they produce disease; that he was acquainted with only three or four mill dams in this section of the country, and he believes that all the mill dams with which he is so acquainted are nuisances, and produce disease and sickness. That he is not much acquainted with the dam and pond in question in this cause; that he has seen said dam and pond, and has passed near the same, but never noticed it particularly; that he knew very little about the dam or pond in question, and has neither formed nor expressed any opinion about the matter.

"The defendant's counsel then objected to the said Lucius Beall as a juror in said cause, for the reason that it appeared that he was not indifferent between the People and the said defendant, and insisted that good and sufficient cause for challenge to the said Lucius Beall had been shown, and thereupon moved the court that the said Lucius Beall be set aside for cause shown; which objection and motion were there and then overruled and denied by the court, and the court there and then decided that no cause for challenge to the said Lucius Beall had been shown, and that he was a competent and proper person to be sworn and serve as a juror upon the trial of said cause; to which decision and ruling of the court the counsel for the defendant then and there excepted."

The jury having been sworn in the case, Orson Randall, among others, was called as a witness for the people, and on his cross-examination testified that he "had learned that a civil action has been commenced in his name, against the defendant, by Mr. Coe, as attorney, for flowing witness' land. Had given orders to have a suit commenced, but did not mean to have it commenced so soon. Did not know that the civil suit had been commenced until the former trial of this cause, in June, 1855. The civil suit has been pending since before the finding of this indictment. There were several other suits commenced by

other parties, against the defendant, for flowing land, about the same time, as witness has understood."

The counsel for the defendant then asked the witness "was there any agreement between you and other persons who have brought such suits against the defendant, to suspend the prosecution of them until this suit should be decided?" Which question was objected to by the counsel for the People, and the objection sustained by the court, and the defendant's counsel excepted.

The defendant's counsel then offered to prove by this witness, that after the commencement of the civil suits spoken of by witness, against the defendant, there was an agreement or understanding entered into between the several plaintiffs in such suits (including the witness), to the effect that the prosecution of the civil suits should be suspended, and that they should procure the finding of this indictment, and carry it on to judgment, and thus get the defendant's dam removed; which proposed proof was objected to by the counsel for the People, and the objection sustained by the court, and the defendant's counsel excepted.

After the prosecution had rested, defendant gave in evidence the record of the case of The People v. William Aldrich, Hiram Shoudler, and Martin Barnhart, indicted in said Circuit Court for nuisance, which record showed a trial and an acquittal, May 1st, 1846.

*Henry C. Gilbert*, was then called, and sworn as a witness on the part of defendant, and testified as follows:

"I was the prosecuting attorney of this county in 1845 and 1846. I recollect the indictment found against this same dam; was prosecuting attorney at the time. There never was but one indictment found against this dam while I was prosecuting attorney. William Aldrich, Hiram Shoudler, and Martin Barnhart, were the proprietors of this dam, and they were the defendants in the former indictment."

The defendant's counsel then asked the witness, "what

particular matters and questions were litigated upon the trial of the said indictment against the said Aldrich, Shoudler, and Barnhart?" To which the counsel for the People objected; and thereupon defendant's counsel stated to the court, that they proposed to prove, that on the trial of said Aldrich, Shoudler, and Barnhart, the question actually litigated was, whether the dam was or was not a nuisance, and that no question about the ownership or occupation of the premises, by the said Aldrich, Shoudler, and Barnhart, was raised or made on said trial, nor any other question except that of nuisance or no nuisance. But the court sustained the objection to such evidence, and defendant excepted.

The proof being closed, defendant's counsel requested the court to charge the jury, among other things:

"That the record evidence of the trial and acquittal of the proprietors of this same dam, upon a former indictment for nuisance, is competent evidence of the fact that, at the time, said dam was not a nuisance, and that if the jury believe from the record that the dam was not a nuisance at that time, they must be satisfied from the evidence that it has become a nuisance since, by means of some change in its condition, or in the manner of using it.

But the court charged that the verdict on the trial of the indictment against the former owners of the dam had nothing to do with the present trial; that the question for the jury in the present one was, whether the dam was a nuisance while in possession and under the control of the defendant, as charged in the indictment. To which charge exception was taken.

The jury having found defendant guilty, a motion was made for a new trial, based in part upon causes shown by affidavits, which motion was denied by the court, and the following order entered:

"It appearing to the court that the said Lorenzo D. Crippen is duly convicted, as charged in the indictment in

this cause, of having, on the first day of June, in the year one thousand eight hundred and fifty-three, and after, at Girard, in the county of Branch, and in and upon a certain stream or water-course there, and being known as the Coldwater River, keep, continue, and maintain a public nuisance, by means of the continuance and maintenance of a dam or obstruction in and upon or across said stream or water-course, which was and is raised above its natural height, and whereby a great quantity of both standing and fallen timber, trees, logs, brush, and underbrush, and other vegetable matter, was and is overflowed, inundated, and covered with water, and by reason of which divers noisome, offensive, unwholesome smells, stenches, and exhalations were from thence emanated, issued, and sent forth, so that the air then and there was and is greatly filled and impregnated with the said smells, stenches, and exhalations, and was and is rendered and become corrupted, offensive, unwholesome, and uncomfortable, to the great damage and common nuisance of all the citizens then and there inhabiting and being and residing, going and returning and passing through said streets and highways, and along and across said stream or water course:

"It is therefore, on motion of Egbert K. Nichols, prosecuting attorney, *Ordered*, That said dam nuisance be abated and entirely demolished and removed, and that the said dam or obstruction be completely and effectually demolished, destroyed, and removed.

"And it is further *Considered and Ordered*, That the writ of the People of the state of Michigan issue out of and under the seal of this court, directed to the sheriff of the county of Branch, commanding him to take sufficient aid and assistance, and repair forthwith to the place where the nuisance, or cause of the nuisance, hereinbefore described, may be, and the same then and there remove, effectually destroy, demolish and wholly abate, and of his doings thereon make due return."

*T. Romeyn*, for plaintiff in error.

That the court erred in overruling the challenge to Beall as a juror, counsel cited: — 1 *Mich.* 286; 16 *N. Y.* 503; *Whart. Cr. L.* § 2375; *Arch. Cr. Pl.* 359. That Gilbert's evidence was competent: — 3 *Hill*, 485; 18 *Johns.* 352.

*J. M. Howard, Attorney General*, for the People.

As to the challenge to Beall, the Attorney General cited: 1 *Burr's Trial*, 416; *Whart. Cr. L.* §§ 2978, 3014; 4 *Wend.* 229. That the proposed evidence from Gilbert was incompetent, since the former acquittal or conviction, even if defendant had been a party, would have been no answer to the present indictment: — *Whart. Cr. L.* § 2367.

MANNING J.:

Defendant was indicted for a public nuisance, and on his conviction, an order was made by the court, under § 1347 of Compiled Laws, for removing the nuisance, which is a mill dam; and the case is before us on a writ of error.

A question arose on the argument, whether the order for the removal of the dam was a final judgment on which a writ of error would lie. We think it is. A judgment is the decision or sentence of the law, given by a court of justice or other competent tribunal, as the result of proceedings instituted therein: — 1 *Bouv. Inst.* 264: and the statute relative to writs of error uses the words "final judgment or determination."

The punishment for a public nuisance is imprisonment or fine, or both, under section 5958 of Compiled Laws, and, in the discretion of the court, the destruction or removal of the nuisance, when it is injurious to public health, at the expense of the defendant, under the direction of the Board of Health of the township: — *Comp. L.* §1347

The removal of the nuisance is not a necessary part of the punishment. It is left discretionary with the court,

It is a power that may or may not be exercised; but when exercised, it must be at the time of imposing the fine or imprisonment, and form a part of the same judgment. We can not think the Legislature intended the power should continue to exist after defendant had been fined or imprisoned, as it would leave it in the power of the court, at any time thereafter, to inflict a second punishment. Nor can we suppose it the intention of the statute that the order should precede the judgment for imprisonment or a fine, as it would involve the absurdity of a double punishment, or of two distinct judgments, each punitory in its nature, given at different times, for one and the same offense.

For these reasons, as there is no judgment for imprisonment or a fine, we regard the order for the removal of the dam as erroneous. And here the question arises, whether, the error being in the judgment itself, and not in a part of the record preceding the judgment, we can do any thing more than reverse the judgment. We clearly have no power to correct the error by rendering such judgment as the court below should have given; and cases were cited to show the record cannot be remitted to the court below for that purpose: — 2 *Met.* 419; 5 *B. & C.* 395; 7 *Adol. & El.* 58.

We should feel bound by these cases, if the plaintiff in error had placed himself in a position to demand, as a matter of strict right, a reversal of the judgment on the ground stated. This he has failed to do, for no complaint is made by him of the judgment itself, in his assignment of errors, and if any of the alleged errors assigned on the bill of exceptions are sustained, the judgment may be reversed on that account, and the cause be remitted to the court below for a new trial.

Twenty one errors are assigned in all. Five of them, from seventeen to twenty one inclusive, are errors alleged to have been committed by the court, in refusing to grant

a new trial. The affidavits on which the motion was made, have been returned with the record and bill of exceptions into this court; but as they form no part of the record, or bill of exceptions, we can not look into them for the purpose of determining whether the court erred or not in denying the motion.

All of the other assignments of error are on the bill of exceptions. The first and second are on the refusal of the court to allow one of the jurors to be asked what his opinion was respecting mill dams generally, in that part of the country; and in permitting him to be sworn as a juror, after stating that he had formed an opinion as to whether mill ponds in that part of the country were nuisances, &c. The bill of exceptions states, that after the jury had been called, the court asked defendant's counsel if he had objection to any of the jurors, and that he asked them whether they or any of them had formed or expressed any opinion respecting the guilt or innocence of the defendant, of the charges contained in the indictment; and that one of the jurors stated that he had formed, and had, an opinion as to whether or not mill ponds in that part of the country, with which he was acquainted, were nuisances, when the water covered a large surface, &c. The defendant's counsel then asked, What is your opinion respecting mill dams generally in this part of the country? The question was objected to, and the objection sustained by the court. Defendant's counsel then objected to the competency of the juror, which was also overruled. It does not appear the juror was challenged, or that his answers to the questions put to him were on oath. The whole proceeding was irregular. He should have been challenged, and sworn to answer such questions as might be put to him, touching his competency as a juror in the cause. As this was not done, there is no question of law in this part of the bill of exceptions to be reviewed.

The third error assigned, is that Lucius Beall was al-

lowed to serve as a juror. He was challenged, and on his *voir dire*, stated that he had formed, and had, an opinion that mill dams generally in that part of the country were nuisances, and created malaria, and thereby produced disease; and when the water is dammed up, and the pond covers a large surface, and is filled with vegetable and other filthy or decaying matter, it is a cause of disease: that all the mill dams with which he was acquainted, he believed to be nuisances, and that they produced disease: that he was acquainted with only three or four mill dams in that section of the country, and he believed that all the mill dams with which he was acquainted were nuisances, and produced disease and sickness; that he was not much acquainted with the dam in question, and had not formed or expressed any opinion regarding it.

It is quite evident that, with his preconceived notions against mill dams in that section of the country, he could not sit and hear the evidence and weigh it with the impartiality a juror should. The question of nuisance or no nuisance is one of fact to be found by the jury; and he says that, in his opinion, mill dams generally in that part of the country are nuisances, and produce disease, and that all the mill dams with which he is acquainted, he believes to be nuisances. By this we understand that, in his opinion, as a general rule, mill dams are nuisances, and such as are not are exceptions to the rule. We think the juror should have been rejected.

The court likewise erred in not permitting defendant's counsel to ask Randall, a witness for the People, whether there was not an agreement between him and others who had sued defendant for flowing their land, to suspend the prosecution of their suits until defendant was tried on the indictment; and also in not allowing defendant to prove by the witness that, after the civil suits were commenced, there was an agreement between the parties to such suits to get defendant indicted, and in that way procure a removal of

the dam. The evidence was admissible to show the interest of the witness in the public prosecution, and the influence it might have on his testimony for the People.

The court should have permitted defendant to prove by Gilbert, that Aldrich, Shoudler, and Barnhart, were acquitted on the merits on the trial of the indictment against them for a nuisance, when they were the owners of the dam. The evidence should have been admitted to go to the jury for their consideration, in connection with the record showing their acquittal. As two distinct facts must be proved to sustain an indictment for a nuisance, viz: the nuisance, and defendant's connection with it in a way to make him criminally liable, it was competent for defendant to show, in the way he proposed, on what ground the acquittal was had·

And the court afterwards erred in charging the jury that the former indictment and acquittal under it had nothing to do with the pending prosecution. The court, we think, should have charged, that the record of the former prosecution was evidence the dam was not a nuisance at the time the indictment mentioned in it was found, but not that the dam had not since become a nuisance, by some change in the use of it, or otherwise.

Judgment must be reversed, and a new trial ordered.

The other Justices concurred.