Lee *v.* Pembroke Iron Company.

---

## JOSEPH A. LEE *vs.* PEMBROKE IRON COMPANY.

The owners of a dam across tide-waters, erected in accordance with a legislative grant, are not thereby protected from liability to the owner of an ancient mill injuriously flowed by such dam.

If such grant provides no means for ascertaining and paying the damages thus directly resulting to such mill, the owner thereof has a remedy at common law therefor.

ON EXCEPTIONS.

CASE to recover damages to an ancient mill owned by the plaintiff, alleged to have been caused by a dam erected across the Pen-

nemaquan river, at Bluff Head, in accordance with Special Laws of 1853, c. 164.*

The case is sufficiently stated in the opinion.

*Bion Bradbury*, for the defendants, in support of the exceptions, contended

1. That the State has the sovereign property and dominion over all tide-waters, and the soil under them, within its jurisdictional limits. A navigable stream may cease to be made such by the appropriation of the soil, under legislative authority, to other purposes; as if the legislature were to authorize the erection of a solid dam across a navigable creek, and permit the land to be wholly filled up and converted into house-lots. *Charlestown* v. *County Commissioners*, 3 Met. 202.

2. The legislature of the State has the authority to grant to individuals the property or control of its tide-waters, and the soil under them, and are the sole judges of its propriety and expediency. But the courts are to consider as public property all the inlets of the sea, leaving the question of comparative public convenience respecting their regulation, management, and disposal to the legislature, and upon such terms, conditions, and reservations as the latter power may prescribe. *Commonwealth* v. *Breed*, 4 Pick. 460.

3. The Bluff Head dam having been erected and maintained by the defendants under the authority of the State, and upon the terms and conditions prescribed by the State, they are thereby protected from the claim of damages set up by the plaintiff by reason of the occasional overflowing of the plaintiff's mill. *Spring* v. *Russell*, 7 Maine, 273. *Parker* v. *The Cutler Mill Dam Co.*, 20 Maine, 353.

---

* Special Laws of 1853, c. 164. Certain persons named "are hereby authorized to maintain a dam across Pennemaquan river, on their own land, below the ship-yard, in the town of Pembroke, the waste way to be in or across the channel, and not to be less than thirty-seven feet wide, and to be kept open all times except when it may be necessary to raise the water for the purpose of floating vessels from said ship-yard to and through said dam. And said waste way shall not be closed more than thirty-six hours at any one time, neither after being opened shall it be reclosed until it has been open thirty-six hours, if any person wishes to pass through the same."

4. The case presents no question touching the taking of private property for a public use, but merely one as to damages occasioned by the license of the legislative power over tide-waters within the limits of the State.

5. The damages are consequential, resulting from the change in the flux and reflux of the tide produced by the erection of the dam. *Parker* v. *The Cutler Mill Dam Co.*, *supra*.

*J. Granger*, for the plaintiff.

Barrows, J. The plaintiff claims in this action to recover damages done to his grist-mill, situated on the Pennemaquan river, by means of back water caused by the defendants' dam at Bluff Head, a short distance below the plaintiff's mill. The Pennemaquan is a small stream having a succession of rapids near its mouth. Technically speaking, it is navigable at the plaintiff's mill, the tide flowing there, as the jury have found, six or eight inches.

The plaintiff, and those under whom he claims, have been in the occupancy and use of the mill and privilege, continuously, since 1832; and were so for more than twenty years before the passage of the private act by the legislature, under which the defendants claim that they are relieved from the payment of damages.

Plaintiff's title to his mill, his right to the undisturbed use and enjoyment of it as his own private property, cannot be successfully impeached. Defendants' dam was built in 1853, and has been maintained under the authority conferred by c. 164, Private and Special Laws of 1853, which makes part of the case.

The only ruling complained of is, that " if the plaintiff is otherwise entitled to recover, and the maintaining the dam at Bluff Head was the immediate and sole cause of the overflowing of the plaintiff's mill, the legislative grant of authority to maintain said dam on tide-waters would not protect the defendants from a liability to pay such damages as were the direct and natural consequences of the overflowing of the plaintiff's mill." The act of 1853 authorizes the parties, whom the defendants represent, to maintain the dam on their own land at a point described, in a manner speci-

fied, affording certain conveniences to those wishing to make use of the stream as a highway, but making no provision for assessing the damages caused to private property thereby.

The ruling simply disaffirms the position that a party can justify a direct infringement upon another's property, under an act of the legislature which provides no mode of assessing the damages to the property thus encroached upon. It affirms, that for such direct injury the common-law remedy still remains to the injured party.

Such a limitation of the effect of a grant of legislative authority to do a particular act is necessary if we would conform, in their true spirit, to the constitutional provisions that private property shall not be taken for public uses without just compensation, and that "every person, for injury done him in his . . . property, . . . shall have remedy by due course of law."

It cannot be necessary to waste time or words to establish the proposition that he who assumes, under color of legislative authority, to overflow an ancient mill, "takes" that mill and privilege from the owner as directly and effectually as though he entered upon the premises and demolished the building. The truth of it is self-evident.

That a legislative grant of authority to do an act which is the immediate and sole cause of such a destruction of his neighbor's property, shall not be so construed as to protect the party doing it from being required in some form to make just compensation, or to preclude the injured party from a remedy by due course of law, is a necessary sequence from the constitutional provisions referred to.

In *Perry* v. *Wilson*, 7 Mass. 393, where the defendant undertook to justify, as a member and servant of a corporation which was created by statute, for the purpose of " making, laying, and maintaining side-booms at convenient places in the Androscoggin river," Parsons, C. J., in an opinion overruling the justification, and sustaining the plaintiff's action, says: " The legislature might have appropriated the plaintiff's close to public uses without his consent, provided a reasonable compensation had been made him therefor. But in this statute no compensation is provided, nor any means of ascer-

taining or securing the payment of it declared. If, then, this act was construed to be an appropriation of the plaintiff's lot for the use of the public, such appropriation would be unconstitutional and void." "Therefore" the justification alleged was held insufficient. In *Stevens* v. *Proprietors of Middlesex Canal*, 12 Mass. 466, Parker, C. J., says: "In the declaration of rights prefixed to our constitution, it is provided that private property shall not be taken and appropriated to public uses without compensation to the owner. So that, if the legislature should, for public advantage and convenience, authorize any improvement, the execution of which would require or produce the destruction or diminution of private property, without affording at the same time means of relief and indemnification, the owner of the property destroyed or injured would undoubtedly have his action at common law against those who should cause the injury, for his damages. For although it might be lawful to do what the legislature should authorize, yet to enforce the principles of the constitution for the security of private property, it might be necessary to consider such a legislative act as inoperative, far as it trenched upon the rights of individuals."

In *Coggswell* v. *Essex Mill Corp.*, 6 Pick. 94, it was held that where the legislature authorized a corporation to build across a navigable river a mill-dam of a given height, and to keep up the same head of water throughout the year, but provided no remedy for any person whose lands should be thereby injuriously flowed, the remedy must be by an action at common law, Parker, C. J., remarking: "What, then, is the remedy, if any one is injured by the execution of the act of the legislature? An action at common law. The act gives the right to erect the dam in a form supposed to be sufficient to protect from injury the property of the land-owners. If it turns out insufficient, they will have an action for the consequent injury."

In *Thacher* v. *Dartmouth Bridge Co.*, 18 Pick. 501, Shaw, C. J., after holding that if the act of incorporation were to be construed as conferring a power to take private property for public uses without the payment of an adequate indemnity, it would be unconstitutional

and void, proceeds as follows : " The consequence would be that the party damaged would be remitted to his remedy at common law ; the wrongful act would stand unjustified by legislative grant.    This has been so often decided in this Commonwealth that it must be taken as a settled principle."    The same principle is recognized in *Comins* v. *Bradley*, 1 Fairf. 447, Weston, J., remarking that " compensation must be made or provided for when the property is taken. It is upon that condition alone that such taking is authorized."

In *Crittenden* v. *Wilson*, 5 Cowen, 165, it was decided that an act authorizing one to build a dam on his own land across.a river that is a public highway, protects him only against an indictment, and not against the claim of a party whose land is thereby flowed.

The form of the remedy has often been the subject of judicial inquiry ; but that the party, whose property has been thus invaded under the sanction of legislative authority, must have some remedy, under the common law, if no statute remedy is furnished or found applicable, has never before now been denied.

The cases cited to support the denial will all be found, on examination, to be claims of indirect and consequential damages accruing from the abridgment or subversion of those rights which the party complaining had in common with the rest of the public; a class of rights which, of course, it was competent for the legislature, in the exercise of their sovereign power of domain, to surrender or to grant to those who would improve them, whenever it was found to be for the public interest so to do.    Such a grant is no infringement upon private property.

It is the power of the legislature to control such rights only, that is asserted in *Commonwealth* v. *Breed*, 4 Pick. 460.

It was precisely such damages, and such only, that were claimed in *Spring* v. *Russell*, 7 Maine, 273.

So it is also in *Parker* v. *Cutler Mill Dam Co.*, 20 Maine, 353, the case chiefly relied on in defense.    The injury to his fishing privileges, and the obstruction to his free access to his land from the sea were the matters of which the plaintiff there complained.    The case expressly finds that " no part of his land was flowed."    He had

no erections of any kind on his premises. He had "a place to build a wharf," but no wharf. If he had a mill-site for a tide-mill (as one expression in the opinion seems to intimate) it does not appear that he ever had a mill. The defendants, under their act of incorporation, were the first appropriators of the water for milling purposes, and of that he would have no right to complain, even if he were thereby prevented from making a like use of it. See 2 Washburn on Real Property, 66. In fine, it is only by a perversion of the opinion, and the omission of an important member of the sentence quoted from it, that it can be made to bear the construction which the defendants here seek to give it. The opinion declares that "the corporation is not, therefore, liable for any injury which the plaintiff may have suffered by obstructions to the navigation by altering the flux and reflux of the tide.

No private or exclusive rights of Parker had been invaded. His was not the case of an ancient mill entitled to the flow of the water *ut currere solebat.* His rights of fishing and navigation were those which he possessed as one of the public, and these rights were subject to the power of eminent domain, vested in the representatives of the public to whom they belonged.

But for the security of private rights in property they are placed beyond the reach of arbitrary specific legislation, by the fundamental law of the State, and guarded by constitutional barriers which are always to be carefully regarded.

The case of *Parker* v. *The Cutler Mill Dam Co.* is not an authority for the doctrine that a legislative grant can afford immunity to a party in the infliction of a direct injury upon private property or vested individual rights.

Redress for such injuries the courts have always been ready to afford in some form, though caused by the acts of a company which are authorized by their charter.

Thus injuries necessarily caused by a railroad company to adjacent lands or buildings, in the careful exercise of their right of construction and grading are to be included in the estimate made by commissioners or jury sitting for that purpose. *Whitehouse* v. *An-*

*droscoggin Railroad Co.*, 52 Maine, 208.   *Dodge* v. *County Com. of Essex*, 3 Met. 380.

The provision in the charter, or by general law, of a specific mode of ascertaining and securing proper indemnity, confers no right to damages which did not exist before. Under our constitution the omission to make such provision can take away none but those that pertain to the common privileges that belong to the public, and which the legislature, as guardians of the public weal, have the power to control. Private property,—individual rights are preserved without specific mention made of them by virtue of the constitutional guaranties.

The legislative authority to do the act which, however carefully done, will naturally result in damage to private property, must be coupled with provisions for ascertaining such damage and securing an indemnity to the injured party, in order to prevent those who act under it from being dealt with at common law as wrong-doers. The legislature has no power under the constitution to make over to any individual or corporation any rights save those of the public, without securing a just compensation. It is but just to presume that they have no intention to exceed their powers, and that where no specific mode of ascertaining damages is provided, they design to leave the parties to the common-law method of ascertaining them.

So if it be said by those who regard form more than substance, words more than the ideas they are designed to express, that the plaintiff's mill was not taken, but only overflowed, it will make no difference. The other constitutional provision, to which reference has been made, securing to every person, for an injury done him in his property, a remedy by due course of law must cover the case. The doctrine contended for by the defendants is as novel as it is untenable.                                          *Exceptions overruled.*

CUTTING, KENT, WALTON, AND DANFORTH, JJ., concurred.