## PORTER A. SHEPARD v. THE PEOPLE.

*Abatement of nuisance by destruction of property.*

A court is not obliged to order the destruction of property which it has decreed to be a nuisance.

Comp. L., § 1702, permits the destruction of certain nuisances by the board of health of the township. § 1740 provides who shall constitute the board in a city. *Held* that where the city charter provides for the board, these provisions cannot apply.

Property cannot be destroyed for the abatement of a nuisance until its destruction is lawfully ascertained to be necessary therefor, and then only so far as is determined to be necessary.

An information charging that a dam creates a nuisance must be precise in its allegations and clear in its statements of consequences, to justify destroying the dam to remove the nuisance.

Error to Oakland. Submitted Jan. 28. Decided April 9.

INFORMATION against a public nuisance. Defendant brings error.

*J. Ten Eyck* for plaintiff in error. A nuisance is to be abated by removing that in which it consists, and no more than necessary should be removed, *People v. Albany,*

11 Wend., 539; *Rex v. Pappineau*, 1 Strange, 688; *Cooper v. Marshall*, 1 Burr., 267; *Babcock v. Buffalo*, 56 N. Y., 268; *Clark v. Syracuse*, 13 Barb., 32; Roscoe's Crim. Ev., 799: private property cannot be destroyed for the benefit of the public unless its destruction is shown to be absolutely necessary, *People v. Platt*, 17 Johns., 212; Mich. Const., Art. XV., §§ 9 and 15; Art. XVIII., §§ 2, 14; 2 Kent's Com., 423-5, n.

Attorney General *Otto Kirchner* and *M. E. Crofoot* for defendant in error.

GRAVES, J. The plaintiff in error was prosecuted for causing a public nuisance in the city of Pontiac by means of a mill-dam therein across the Clinton river. The information assumed to explain the effect and in what way and with what aids it was produced. The jury found a general verdict of guilty, and the court, after overruling a motion in arrest of judgment, imposed a fine of fifty dollars, enforceable by imprisonment, and ordered that the dam should be removed at the expense of plaintiff in error, but at such time and in such manner as the board of health of the city should direct.

The true question in this court is whether this branch of the judgment which requires the dam to be destroyed can be supported, and we are of opinion that it cannot.

1. This part of the determination, though separable from the rest, is an indivisible order and taken by itself cannot be broken into parts. It is an entirety and must stand or fall as such. If any portion of it is bad the whole must fall. Hence, the requirement to remove the dam must follow the fate of the condition prescribing the intervention of the board of health.

In the next place it must be observed that if the dam was subject to be destroyed as a cause of nuisance it was not imperative on the court to order it to be destroyed. It was competent to abstain from an exertion of the power. *Crippen v. People*, 8 Mich., 117.

The court, however, conceiving that the occasion was a proper one for its exercise under the condition, and not otherwise, that removal should be made only at such time and in such way as should be directed by a board of health, was led to assume *first*, that the general statute (Comp. L., § 1702) empowered it to qualify the order for abatement by a condition of that kind; and *second*, that the other general provision in § 1740 came in aid of the first, and for the purpose thereof provided and pointed out a board of health for the city of Pontiac.

Now, when taken by itself the earlier section (§ 1702) has no application to a city and its operation is impossible there. It is expressly confined to townships, and it cannot have effect in a particular city unless by means of an appropriate supplementary provision which in itself is operative in such city.

The subsequent section (1740), which is intended to further the general purposes of the chapter, makes the "mayor and aldermen" of each incorporated city, and the "president and council or trustees" of each incorporated village, whatever the number in either case, a board of health within the same. The court regarded this provision as operative in the city of Pontiac, and being of opinion that it so supplemented and aided the other as to cause that to operate with it, made the conditional order in question. This construction is not tenable. Whatever may have been the case prior to 1861, when Pontiac became incorporated as a city, it is certain that since that time the general provision in Comp. L., § 1740 has not been operative there.

In providing for a city government the Legislature made such special regulations on the subject of a board of health therein as were considered most proper, and in so doing practically negatived the operation of the general laws in question within the city. This is too evident to be seriously questioned, and it is not left to depend upon the rule that a general provision is deemed

40 MICH.—62.

to be superseded as to a particular place or occasion by a new one made specially therefor.

The two classes of regulation are incompatible in their plan and operation. By the general statute a board of health in a city is to consist of the "mayor and aldermen," whatever the number of the latter, and whatever the term of service. They are *ex officio* members of the board. An *election* of mayor and aldermen involves an election of the board of health. They come in directly by popular vote and not by appointment, and are not chosen with any special reference to their capabilities for the peculiar duties incumbent on a board of health in a dense population.

If this scheme is sought to be applied to Pontiac the positive institutions and regulations of the incorporating laws cannot be made to give way; and by the amended charter the board of health must consist of the mayor, an officer elected annually, and of eight aldermen respectively elected for two years, and consequently making a body of nine persons and holding by election. 2 Sess. L. 1867, p. 605.

Now, it will be admitted that the Legislature did not intend there should be two boards of health at the same time, differently composed and organized and with jurisdiction over the same territory, and one of which in a separate capacity should not only have power to legislate for the other, but power to appoint it. But the supposition that the general statute is applicable involves those results.

The common council, whose members by the general provision are *ex officio* the members of the board of health and together with the mayor compose the board, is required by the charter to annually appoint a board of health of not less than three nor more than seven persons (two less than the mayor and aldermen) and a competent physician to be health officer thereof (Sess. L. 1861, p. 384, § 159); and another provision authorizes

this board to appoint a clerk (§ 167, p. 387), and another gives such compensation as the common council consider reasonable. § 168, p. 387.

If it be possible, the purpose to exclude the general provision is made more manifest still by another feature. The Legislature had in immediate view not only the suppression of nuisances generally any where within the city limits, but especially and expressly all such as might exist in the very river which this case claims to be infected, and the charter accordingly empowered the common council "to provide for cleansing the Clinton river of any obstructions to the channel thereof, or of nuisances therein" (section 45, subdivision 10), and "to preserve the salubrity of the waters of the Clinton river, and other streams within the limits of the said city; to fill up all low grounds or lots covered or partially covered with water, or to drain the same, as they may deem expedient." Section 45, subdivision 28. In citing these provisions to show the inapplication of others, no opinion is given on their scope and legal effectiveness.

No further examination of the case is necessary in this view of it. We find that the provision in section 1702 is confined by its own terms to townships, and that the other general provision in section 1740, and which is relied on as operative to give it force and efficacy in the city of Pontiac, is not operative there, and is incompetent to produce that effect. Hence that the order for abatement grounded on it is without any basis and cannot be supported.

2. There is much room for question whether on the charge as laid in the information the finding of guilty would warrant the destruction of the dam if there were no other difficulties.

Before going so far as to destroy valuable property not *prima facie* a nuisance in itself, or in consequence of its position, the case ought to be clear. The allegations ought to be so precise and certain, and the statements

of sequence so unquestionably proper as to afford a safe guide for the court, and when, as in this case, the object charged as being the cause of nuisance can only be such by means of its action or influence upon other things, and not as being inherently noxious, or by means of being in a wrong place, it would seem that the information should show explicitly that there is a nuisance; that the dam is chargeable with it, and that its removal is necessary to suppress the nuisance. To proceed to a destruction of the dam on grounds less certain would hardly seem to be defensible.

Property is not to be destroyed until its destruction is lawfully ascertained to be necessary in order to stop the nuisance, and then no other and no more is to be destroyed than is thus determined to be needful to effect that object. *Welch v. Stowell*, 2 Doug. (Mich.), 332; *Bloomhuff v. State*, 8 Blackf., 205; *State v. Kaster*, 35 Ia., 221; *Finley v. Hershey*, 41 id., 389; *Brightman v. Inhabitants of Bristol*, 65 Me., 426; *Miller v. Burch*, 32 Tex., 208: 5 Amer., 242.

The information in question sets out in terms that one of the things acted upon by the dam in causing the nuisance is "sewage," and it does not appear how that comes to be turned into the river, nor what share it has in the alleged nuisance, and no *prima facie* ground is perceived for inculpating the dam as an object to be abated on account of that part of the general bad effect contributed by this sewage. It cannot be deemed one of those natural or usual concomitants of river action in this country which the law may contemplate as a proximate sub-agency, and for whose noxious effects the dam may be considered *prima facie* liable and abatable, and the record does not disclose what cause there would be for complaint if this source of mischief was cut off and this mode of fouling the river stopped.

Finally, it may be questioned whether it sufficiently appears that destruction of the dam is the only adequate remedy, and that other measures involving comparatively

little cost or damage, and equally efficacious for abating the nuisance, are not open; or indeed, whether it sufficiently appears that the nuisance would not remain in case the dam were destroyed, and possibly in a state to be more offensive. It occurs to suggest further that although there is no provision which requires the jury to find specially on an indictment or information on the necessity for destroying property to remove the nuisance; still it must not be taken for granted, as my brethren think, that judgment for such destruction can be given in the absence of a finding of a present necessity therefor to effect abatement.

That branch of the judgment ordering the removal of the dam must be reversed.

The other Justices concurred.