RUTZ v. CITY OF ST. LOUIS.*

(*Circuit Court, E. D. Missouri.* February 13, 1882.)

1. RIPARIAN RIGHTS—DIKES—DAMAGES.

Where a city, by authority of an act of the legislature of the state in which it is situated, builds a dike extending into a navigable river, owners of land on the opposite shore and in another state, who suffer no loss in consequence of the erection of the dike, cannot maintain actions against the city for damages.

Action for damages alleged to have been sustained in consequence of the defendant building a dike extending into the Mississippi river.

Upon the trial of this case, without the intervention of a jury, the court finds the facts to be:

.. That prior to 1874, and for several preceding years, the current of the Mississippi river was constantly eroding the east river bank, owned by the plaintiff. Between that bank and the Missouri shore was an island, known as Arsenal island, the main channel of the river in 1874 being between said island and the Missouri shore, and immediately along the latter. Under an act of the Missouri legislature, and pursuant to an ordinance of the defendant city under said act, with the view of improving the harbor of said city, a dike was built by it in 1874 known as the Bryan-street dike, extending into the Mississippi river and the main channel thereof 700 feet towards said island from the Missouri shore. The distance from the Missouri shore to the island, the head of which was above the dike, was 2,400 feet. Several witnesses were of opinion that the tendency of said dike was to deflect the current of the river to the east of the island and erode the bank owned by plaintiffs, which, as the evidence showed, had been washed away to the extent of 37 acres or more, valued at $300 per acre. Other

*Reported by B. F. Rex, Esq., of the St. Louis bar.

witnesses testified that the main channel and current of the river, after the building of the dike, continued actually to flow along the Missouri shore, hugging the end of the dike, and was not deflected to the east of said island; nor was there any increased volume of water caused by said dike flowing along the Illinois shore. The dike in question has been since removed, at the instance of United States engineers, and a new dike built by the United States, connecting said island with the Illinois shore above plaintiff's land, and closing the "chute" there for all navigable purposes. The necessary effect of the United States dike is to fill up the east "chute," so that large accretions will follow. In the light of. the testimony the court finds that plaintiffs' land was not washed away in consequence of the dike built by defendant. The court declares the law to be that under the foregoing facts the plaintiffs are not entitled to recover. This ruling is based on the fact that the dike built by the defendant did not damage the plaintiffs. If it had done so, then the plaintiffs would have been entitled to recover to the extent of the injury sustained. Judgment for defendant.

*Thomas C. Fletcher,* for plaintiffs.

*Leverett Bell,* for defendant.

TREAT, D. J. Many propositions have been submitted to the court which are of large moment connected with the navigation and improvement of the Mississippi river. Time does not permit a detailed review of the many authorities on the subject. To enter upon that field of inquiry would compel an exhaustive consideration of the many decisions of state courts bordering upon the Mississippi river, and of the United States supreme court with reference thereto. The eastern boundary line of Missouri, for certain purposes, is to the middle of the main channel of the river. In the absence of a federal statute the state of Missouri could authorize improvements on the Missouri shore to be executed by state, municipal, or other organizations; and the same legal right exists in the state of Illinois.

It is clear that no supposed authority by either state could justify the destruction or substantial impairment of the navigation of the river which is free and common to all the states. In the absence of federal legislation whatever a state permits is necessarily subordinate to the general easement or rights of navigation. It is a well known physical law that the frequent changes of the channel are dependent on transient conditions, so that safe navigation exacts, in the absence of artificial aids, constant observation of natural effects and changes. The channel may be one year in one direction, and in another year in a different direction. The one or the other alluvial shore may be alternately eroded. The contraction of the channel, artificially, causes a scouring, whereby, greater depth being obtained, the same volume of water passes in the contracted channel. If the flow of

water is extended over great width, bars and islands are formed, shifting constantly as freshets and low water occur. Thus Arsenal island, under the changing currents, has shifted downward during the last 50 years for two or three miles. As the head of the island is washed away the foot of the island is enlarged. So this island has been gradually traveling southward, until an effort is now being made under United States authority to give it permanence, for the benefit of both those on the Illinois and the Missouri shores.

At the time of the grievances complained of, many structures had been contrived on both shores, some under local and some under United States authority, the design of which was to control the current in such a way as to benefit the harbor of St. Louis on the one side, and be of equal advantage to the Illinois shore and its proprietors on the other side. The effect of these dikes on the Illinois side has been to add, by accretions, untold wealth to riparian owners there, although their previously precarious shore lines or landings disappeared. In the matter of dollars they have been enriched, and could not show that any damages were recoverable by what, lawfully done, had been of vast moneyed benefit to them.

In the case before the court it was proved that prior to the construction of the Bryan dike there was a constant erosion of plaintiffs' land from natural causes, more or less of the current passing along the bend of the river east of the island. Witnesses testified that the effect of the dike was to deflect from the Missouri side of the island to the Illinois side an increased volume of water, whereby the abrasion would be accelerated. On the other hand, those daily engaged in the navigation of the river swore as matters of fact that no such result occurred. It must be borne in mind that the Bryan dike was on the Missouri shore below the head of the island, and that the current of the river hugged the Missouri shore around the head of the dike, necessarily scouring the bed of the channel to give greater depth for the outflow of the water. If the dike had been above the head of the island, and had thus deflected the body of the water, or any considerable portion thereof, into the "chute" east of the island, the plaintiffs' theory would be tenable; but the dike was below the head of the island, and its natural effect would be to wash away the west side of the island and not the shore east of the island. However that may be, it is evident that the improvements undertaken and abandoned by the defendant, at the instance of Illinois proprietors and the United States authorities, did not damage the plaintiffs. And it is also clear that the subsequent improvements by the United

States authorities in constructing a dike across the "chute," while destroying a navigable front there, has tended to check erosion and give vast accretions to the benefit of the riparian owner.

It is admitted that no one has a right to benefit himself to the injury of another; and that when a riparian owner on one side of the river seeks by dikes, or otherwise, to secure an improvement of his property, he must do so without obstructing the navigability of the river, or destroying the property of the riparian owner on the opposite shore. The uncertainty of shore lines and of the shifting channels of the river, together with the formation of "tow-heads," sand-bars, and islands, are incidents to the possession of lands bordering on the river. Along the Missouri and Mississippi rivers, for hundreds of miles, these changes occur annually to a greater or less degree from natural causes. It might be difficult to determine in many cases whether "rip-rapping" or other protection by a riparian owner of his own property did not cause, in saving his own property, a deflection of the current whereby an erosion might occur elsewhere. Must it be contended that he cannot legally provide against the destruction of his own property; that he must suffer his acres to be swept away in order that some other person may profit from his loss? Such an inquiry, however, is not pertinent to this case. It must suffice that the dike built by the defendant was lawful, and did not damage plaintiffs.

Many authorities are cited which have more or less bearing on this case, notably: *Atbee* v. *Packet Co.* 21 Wall. 389; *Boom Co.* v. *Patterson,* 98 U. S. 403; *Pennsylvania* v. *Wheeling Bridge Co.* 13 How. 518. See, also, *Moffit* v. *Brewer,* 1 Greene, (Iowa,) 348; *Hosher* v. *Railroad Co.* 60 Mo. 333; *Railroad Co.* v. *Schurmeir,* 7 Wall. 272; *Benson* v. *Morrow,* 61 Mo. 345; *Crosby* v. *Hanover,* 36 N. H. 404; *Transp. Co.* v. *Chicago,* 99 U. S. 635; *Lee* v. *Pembroke Iron Co.* 57 Me. 481; *Cogswell* v. *Essex Mill Co.* 6 Pick. 94; *Thacher* v. *Dartmouth, etc.,* 18 Pick. 501; *Comins* v. *Bradbury,* 1 Fairf. 447; *Crittenden* v. *Wilson,* 5 Cow. 165; *Rippe* v. *Railroad,* 28 Minn. 18; *Dutton* v. *Strong,* 1 Black, 23; *Yates* v. *Milwaukee,* 10 Wall. 497; *Pumpelly* v. *Green Bay Co.* 13 Wall. 166; *Ten Eyck* v. *Canal Co.* 18 N. Y. L. 200; *Avery* v. *Fox,* 1 Abb. (U. S.) 246; *Hatch* v. *Railroad,* 25 Vt. 49; *Rowe* v. *Granite Bridge Co.* 21 Pick. 344; *Railroad* v. *Stein,* 75 Ill. 45; *Meyer* v. *City of St. Louis,* 8 Mo. App. 266.

The last case cited lays down correct rules for the case then before that court; but the same are not applicable either to the law or facts now under consideration. Of course an improvement by a city

for public purposes, whereby private property is taken, must be accompanied with compensation, as under the law of eminent domain. If the defendant had actually destroyed, for its own benefit, plaintiffs' property, it would be bound to respond in damages. But its alleged improvements, however absurd for its own supposed benefit, did not injure plaintiffs' property, even temporarily. Indeed, what has since occurred demonstrates that the plaintiffs have suffered no damage from the action of the defendant, but that they may incidentally profit largely therefrom. Whether that be so or not, the fact remains that the dike did not cause plaintiffs' property to be washed away, and that what occurred in consequence thereof, under United States authority, may or may not be of benefit to them, but certainly gave them no cause of action against the defendant.

See *Rutz* v. *City of St. Louis*, 7 FED. REP. 438.