ANDREW H. McNEAL

*v.*

THE ASSISCUNK CREEK MEADOW COMPANY.

Under a statute authorizing the work, the defendants, as a corporation, had almost finished the erection of a dam to drain and reclaim lands overflowed by tide-waters, for sanitary and agricultural purposes.—*Held,* that the court would not, the evidence as to the effect of the dam upon the public health being conflicting, enjoin the erection of the dam on the ground that it was a nuisance.

Bill for injunction.

*Mr. F. Voorhees,* for complainant.

*Mr. A. H. Gangewer,* for defendant.

BIRD, V. C.

The Assiscunk creek is a small stream rising northeast of the city of Burlington, and flowing into the Delaware. The country

McNeal v. Assiscunk Creek Meadow Co.

is so low and level as to admit the tides at least four miles along its course, which ordinarily rises four to five feet, and overflows the banks of the creek, spreading from the right to the left from a few feet to several hundred, covering about two hundred acres. All the lands thus subject to tide-waters are rendered so wet, marshy and sour as to be worthless for agricultural, and nearly so for grazing purposes. To some land-owners the loss is quite inconsiderable, while to others it includes from five to seventeen acres. In addition to the loss thus entailed, it is urged that malaria is engendered by the irregularity of the tides ; that is, when higher than ordinary they cover still more lands, which, in their turn, are again exposed to the sun and air, thus surely producing the dreaded disease.

Situated as New Jersey is, there are perhaps many similar localities within her borders. Whether wisely or not, the legislature has endeavored to place it within the power of the enterprising and resolute to control the tides, reclaim such lands, and dispel this foe to humanity. On March 11th, 1880, an act entitled " An act for incorporation of companies for draining and improving meadows and lands overflowed by tide-water" was approved. *P. L. of 1880 p. 240.* This act provides that the owners of tracts of land of not more than two hundred acres of

---

Note.—The word "nuisances," in a sanitary act, must be construed to mean only matters detrimental to health, *Great Western R. R. Co.* v. *Bishop, L. R. (7 Q. B.) 550.* See *Banbury Sanitary Authority* v. *Page, L. R. (8 Q. B. D.) 97.*

Effluvia that cause sick persons to become worse, though not injurious to persons in sound health, are a nuisance, *Malton Board of Health* v. *Malton Manure Co., L. R. (4 Exch. Div.) 302.*

The owners of wet lands are not guilty of a public nuisance because they neglect to drain them, *Woodruff* v. *Fisher, 17 Barb. 224;* or fail to remove natural obstructions from streams, *Mohr* v. *Gault, 10 Wis. 513.*

Equity will not enjoin the re-erection of a mill-dam authorized by law, although the health of complainant's family had been much improved while the dam was down, *Eason* v. *Perkins, 2 Dev. Eq. 38 ; Bradsher* v. *Lea, 3 Ired. Eq. 301 ; Wilder* v. *Strickland, 2 Jones Eq. 386 ;* so, although complainant alleges that it would be utterly destructive to the health of himself and his family, and highly injurious to that of several of his neighbors, *Barnes* v. *Calhoun, 2 Ired. Eq. 199 ; Daughtry* v. *Warren, 85 N. C. 136 ; Vail* v. *Mix, 74 Ill. 127 ;* but see *Norwood* v. *Dickey, 18 Ga. 528.*

meadow, marsh, swamp or lowlands exposed to the overflow of the tide, may form an incorporated company for the improvement of those lands, and for the further purpose of erecting across any stream of water that may flow through said lands, any bank, dam, sluice, flood-gates or water-works necessary to secure the same from the overflow of the tide.

The fifth section authorizes the construction of such dam at the most convenient point above any established wharf or landing, and above where navigation for sailing and other vessels engaged in transportation of passengers and goods at ordinary high water ceases.

The tenth section provides that as soon as such works are constructed, it shall be the duty of every owner and occupier of the said meadow and lowlands to cause his, her, or their respective portions thereof to be thoroughly and effectually drained, as in the judgment of the managers or a majority of them shall be deemed necessary to secure the improvement of the said meadow and lowlands, and in case of default the managers may cause the same to be done.

The last section excludes the operation of the act from streams flowing through lands comprising more than two hundred acres.

Under what circumstances a dam becomes a nuisance because deleterious to health, *Douglass* v. *State, 4 Wis. 387; Com.* v. *Webb, 6 Rand. 726; State* v. *Close, 35 Iowa 570; Com.* v. *Clarke, 1 A. K. Marsh. 323; People* v. *Townsend, 3 Hill (N. Y.) 479*; especially when built under a charter, *Stoughton* v. *State, 5 Wis. 291; Eames* v. *New England Worsted Co., 11 Metc. 570; State* v. *Gainer, 3 Humph. 39; Nichols* v. *Pixly, 1 Root 129; McNally* v. *Smith, 12 Allen 455; Ensworth* v. *Com., 52 Pa. St. 320; Lee* v. *Pembroke Iron Co., 57 Me. 481.*

Commissioners authorized by statute to drain lands, cannot be enjoined in their work, *Hartwell* v. *Armstrong, 19 Barb. 166;* see *Dixon* v. *Metropolitan Board of Works, L. R. (7 Q. B. D.) 418; Belknap* v. *Belknap, 2 Johns. Ch. 463.*

In some cases of injury to health from dams, injunctions have been allowed, *Bell* v. *Blount, 4 Hawks 384; White* v. *Forbes, Walk. Ch. 112;* although an indictment for the same cause was pending, *Raleigh* v. *Hunter, 1 Dev. Eq. 12;* or one of the neighbors had recovered damages therefor at law, *Miller* v. *Truehart, 4 Leigh 569; Hill* v. *Sayles, 12 Cush. 454; Wason* v. *Sanborn, 45 N. H 169;* see, further, *Rooker* v. *Perkins, 14 Wis. 79; Gherkey* v. *Haines, 4 Blackf 159; Wooten* v. *Campbell, 7 Dana 204; Trabue* v. *Macklin, 4 B. Mon. 407; Mayo* v. *Turner, 1 Munf. 405; Smith* v. *Waddell, 11 Leigh 532; Shepard* v. *People, 40 Mich. 487.*—REP.

Those who compose the defendant company have undertaken to avail themselves of the benefits of this act. The chief complaint in the bill is, that if this work is allowed to be completed, the complainant and those in his employ will suffer in health and happiness, and that he will be greatly injured in his estate.

The bill alleges that the complainant resides and has large and valuable interests in property and business at the confluence of this creek and the Delaware; that he owns considerable lands and an extensive foundry, in which he employs about forty men, all of whom, with their families, reside in the immediate vicinity; and that the construction of a dam and sluiceway across said creek, so as to keep out the tides, will also at times present such an obstruction to the waters of the creek as to cause the said lowlands to be overflowed and so saturated that when the waters are discharged therefrom again, malaria will be surely produced in a more aggravated and fatal form, to the injury of the complainant, because the surface in such so exposed will be greater in proportion as the proposed dam, at ordinary tides, frees the said lowlands from overflow.

It is said in the bill that the defendants have nearly completed the work, and pretend that they have formed a corporation under the act, but charges that they have neither filed a certificate nor a map of the lands, as the act requires. This cannot certainly avail the defendant, unless the question of special damage be found in his favor.

The prayer of the bill is that the defendants may be restrained from completing said dam.

On filing said bill and affidavits annexed, an order was allowed requiring the defendant to show cause why an injunction should not issue.

Testimony has been taken. Several eminent physicians, who have lived in the vicinity for many years and have had large experience in the treatment of diseases generally, and chills and fever, or malaria, specially, were examined as experts, with the view of establishing the effect upon the health of any who live reasonably near, of building said dam. These have all spoken, also, of the effect upon the health of those so situated in the

past, while the waters have been permitted to have their natural rise and fall along the entire course of the creek, twice a day covering the land, and as often receding and leaving the land exposed. Those who were not experts, but who have lived for years along this creek, were also permitted to speak of the prevalence and effect of this disease called malaria upon the health of themselves, their families and neighbors, as it came under their immediate observation.

This testimony weighs most heavily against salubrity and sanitary condition of the locality of the ancient and historic city of Burlington. Had not the great English novelist unmistakably designated another place in his effort to caricature America, we should pronounce this the spot where he found men of stalwart frames chattering with the chills, or dwindling to skeletons from malaria. For more than a hundred years the enterprising and philanthropic have been fighting the tides, so as to prevent the lazy waters and the muddy deposits from accumulating and breeding death, but thus far with ill success. The doctors' labors are not lightened.

Amongst other efforts, one was made on this Assiscunk creek. A dam was constructed near the site of the one now projected. It was carried away several years since, leaving the tides to again assert their dominion over the lowlands above. It was hoped that this circumstance—this experiment long tried and well remembered by many—would enable the court to obtain facts of such force and character as would remove all doubt as to the effects upon the health of the immediate residents, of the construction of the new dam. But the situation is still as perplexing to the court as to the physicians or their suffering patients. The chills abounded during the existence of the old dam and they have abounded since its destruction, whether more now or then would be useless to decide, since the shadows deepen sadly on either hand as the investigation proceeds. Families die, or depart in mortal dread, and others come to wrestle with the insidious foe; but at all times the invisible and consequently indescribable " cryptogamia " has shaken the life out of the Samsons as well as the children.

McNeal v. Assiscunk Creek Meadow Co.

In a locality where nature is so prodigal of mischief, it is not surprising that the complainant should call for aid upon any reasonable suspicion of increase of the danger. Nor is it surprising that those who compose the defendant company should seek legislative aid where skill and quinine have been so long tried in vain.

But the complainant insists that whatever the defendant may do under the law, the contagion will inevitably be increased. Yet he admits that perfect dams, sluice-gates and drainage would not only reduce it, but absolutely overcome it. This, he says, he has established, though at great cost, by his own personal efforts in and about his own home and plantation. This certainly cannot be overestimated. The fact that the action of the tide-waters and exposure of these lands breed malaria, and the fact that the complainant himself has by his skill and liberality shown that the proud waves can be stayed, the wet lands reclaimed and made arable and productive, and the destroyer of happiness and health banished, are abundant reasons for hesitating when called upon to interfere with the undertaking of those who wish to do likewise.

The work of the defendant has the legislative sanction. It is not to be supposed that the legislature intended to authorize the defendant to injure anyone. And where the power conferred is for a salutary as well as a profitable purpose, this court would not, if it had the power, interfere until the application of the right conferred should be fairly tested. The object of the law is to enable owners to *improve* their lands and to *secure* them from the *overflow* of the tides ; and makes it the *duty* of every owner and occupier to *effectually drain his land.* Whatever the powers of this court in protecting the health of individuals, by restraining others from committing nuisances, it certainly will not, when the citizen is about to undertake the removal of a nuisance, say to him, You shall not try.

I think it is very plainly my duty to advise that this order be discharged.