# Town of Cuba *v.* Mississippi Cotton Oil Company; Eagle Cotton Oil Company; Meridian Fertilizer Factory.

### *Injunction to Restrain Execution of Ordinance.*

(Decided April 20, 1907.   43 So. Rep. 706.)

1. *Injunction; Grounds of Relief; Irreparable Injury.*—Equity has jurisdiction to restrain a town from enforcing an ordinance which it is without authority to enact, and which declares that buildings used for storage of cotton seed are nuisances and ordering their removal by a certain day with authority in the town to remove them if the owners fail to do so, at the owner's expense, when the removal of the building will result in irreparable injury to the owners in interfering with their business.

2. *Municipal Corporations; Ordinances; Nuisance.*—Although the chapter empowers the mayor and councilmen by ordinance to remove nuisances, they are without power to enact an ordinance declaring that buildings used for the storage of cotton seed while awaiting shipment are nuisances without reference to the manner in which the business is carried on.

APPEAL from Sumter Chancery Court.
Heard before the Hon. THOMAS H. SMITH.
Bills by the Mississippi Cotton Oil Company, by the Eagle Cotton Oil Company, and by the Meridian Fertilizer Factory against the town of Cuba. From a decree for complainants in each case, defendant appeals. Affirmed.

PATTON & PATTON, for appellants.—The town of Cuba had the right to make regulations to secure the general health of the inhabitants and to prevent and remove nuisances at the expense of those causing them.—Acts 1900-01, p. 2519; Section 2393, Code 1896. The seed house was a nuisance.—2 Current Law, p. 967; 4 Current Law, p. 738. It was a nuisance at common law

and the common law prevails in this State.—*Ferguson v. City of Selma*, 43 Ala. 398. The town was acting within the scope of its authority and was not doing an unlawful act.—132 Ala. 46. This house could be removed if it contributed materially to the production of malaria or other sickness, although other houses in the same vicinity contributed to the same result.—*Richards v. Dougherty*, 133 Ala 569. Municipal authorities can absolutely prohibit a lawful business if conducted so as to constitute a nuisance.—*Greensboro v. Ehrenreich*, 80 Ala. 582; *Ogletree v. McQuagg*, 67 Ala. 580.

. C. J. BROCKWAY, for appellee.—Aside from the fact that the chancery court had jurisdiction to prevent a multiplicity of suits and to prevent a corporation from abusing its powers to the injury of other persons, the ordinance would have worked an irreparable injury, and the chancellor did not err in overruling the demurrer and motion to dismiss.—*Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 123; *Ninninger v. Norwood*, 72 Ala. 277. The ordinance was in excess of the authority of the town.—*Greensboro v. Ehrenreich*, 80 Ala. 582.

DENSON, J.—These causes originated in the chancery court of Sumter county. They all involve the same legal questions, and were in that court submitted together and determined on the same evidence. From a decree in favor of the complainant, in each case, the respondent appealed. The three appeals are here presented in a single record, and we shall determine all of them in one opinion.

Each of the complainants is a corporation organized under the laws of the State of Mississippi, with its principal place of business in the city of Meridian, in that state, and is engaged in manufacturing oil and other products from cotton seed. In the successful operation of the business it is necessary to purchase large quantities of seed, and they purchase them in towns and villages located on the lines of railroads that run into the city of Meridian. In such towns and villages they have erected houses on the rights of way, near the railroad

stations, in which to store the seed they purchase to await shipment, and from which the seed are loaded into cars for transportation. In the town of Cuba, in Sumter county, each of the complainants had such a house. The town of Cuba passed an ordinance declaring the seed-houses of complainants a nuisance and ordering their removal on or before October 10th, 1905. For convenience we here set out the ordinance as it appears in the record. It is in the following language:

"Ordinance 39.

"Section 1. Be it ordained by the mayor and council of Cuba, that the cotton seed houses and the warehouses located on the A. G. S. R. R. Company's right of way on the north side of tracks and west of depot are hereby declared a nuisance, and the owners of said houses are hereby ordered to remove them on or before October 10th, 1905.

"Sec. 2. Be it further ordained that, should any of said owners fail or refuse to remove said houses within the time above specified, the said town of Cuba shall have the right to have the houses torn down and removed at the expense of the respective owners.

"Sec. 3. Be it further ordained that any person found guilty of violating section 1 of this ordinance may be fined not more than one hundred dollars in addition to the penalty hereinabove in section 2 of this ordinance. This ordinance shall go into effect from and after its passage; the welfare of the town requiring it."

Each of the complainants filed its bill against the town to prevent the enforcement of the ordinance, alleging therein that the ordinance is arbitrary and unreasonable, and that its enforcement will result in irreparable injury to the business of the complainant. It is averred in the bills that the houses are neither nuisances per se nor by the manner in which they are conducted and used. The prayer of the bills is for an injunction to prevent the municipality from interfering with the employees of the complainants in storing seed in the houses, and to prevent the enforcement of the ordinance in respect to the removal of the houses.

[Town of Cuba v. Mississippi Cotton Oil Company; Eagle Cotton Oil Company; Meridian Fertilizer Factory.]

A court of equity does not generally look with favor on bills to prevent the enforcement of municipal ordinances, nor concern itself with irregularities in municipal procedure. "If, however, some other matter of equitable cognizance becomes entangled with or is the outcome of such irregularities, courts of equity do not hesitate to intervene. For instance, if an irregular municipal proceeding will lead to an injury which is otherwise irreparable, it will be restrained."—*Port of Mobile v. L. & N. . R. Co.*, 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342;*Montgomery v. L. & N. R. R. Co.*, 84 Ala. 127, 4 South. 626; *Morris Canal & Bkg. Co. v. Jersey City*, 12 N. J. Eq. 252. If the town has no power to declare the houses a nuisance and have them abated in the method adopted (as the chancellor held it does not), then a demolition of the buildings, as shown by the pleadings and evidence, would result in irreparable injury to the complainants, in that their lack of a place for housing seed would make it impracticable and unadvisable for them to purchase seed in large quantities, or, at least, in larger quantities than they could get quick and ready shipment for, thus cutting off the supply of seed to the mills, and, as a consequence, reducing their business and profits. These considerations, in connection with the demolition of the buildings, we think bring these cases within the pale of irreparable injury as a distinct head of equity jurisdiction.—*Authorities supra.* See, also, *Coast Company v. Mayor of Spring Lake*, 58 N. J. 586, 47 Atl. 1131, 51 L. R. A. 657. As shown by the answer to the bills, the city authorities, in passing the ordinance, proceeded upon the theory that the houses, from the manner in which they were used and conducted, were nuisances, and a menace to the health of the inhabitants of the city. But the ordinance on its face does not take into account any such considerations, but premptorily declares the houses a nuisance.

In the charter of Cuba the power of the municipality in respect to the abatement of nuisances, is found couched in the following language:  "* * * The mayor and council of the town of Cuba shall, within the

limitations of this act, have power by ordinances * * *
to prevent and remove all nuisances at the expense of
the owner or person causing the same or upon whose
premises the same may be found."—Loc. Acts 1900-01,
p. 2515. Speaking of the power to prevent and remove
nuisances, Mr. Dillon, in his valuable work on Munici-
pal Corporations (2d Ed., p. 308), says: "This author-
ity may be constitutionally conferred on the incorpo-
rated place, and it authorizes its council to act against
that which comes within the legal notion of a nuisance.
Conferred in general terms, it cannot be taken to au-
thorize the extrajudicial condemnation and destruction
of that as a nuisance which in its nature, situation, or
use is not such." In section 312 of the same volume
the author says: "But, under the power to abate nuis-
ances, property lawfully erected and existing, or a house
which is only a nuisance because occupied by a business
which is such, cannot be destroyed or demolished. The
public can proceed by indictment, or the business car-
ried on in the house suppressed." In *Yates v. Milwau-
kee*, 10 Wall 497, 19 L. Ed. 984, speaking on this subject
in a case where a city, under authority to prevent and
restrain encroachments on rivers running through it,
commenced summary proceedings to remove a private
wharf, the Supreme Court of the United States, through
Miller, J., said: "But the mere declaration by the city
council that a certain structure was an encroachment
or obstruction did not make it so; nor could such de-
claration make it a nuisance, unless it in fact had that
character. It is a doctrine not to be tolerated in this
country that a municipal corporation ,without any gen-
eral laws either of the city or of the state within which
a given structure can be shown to be a nuisance, can, by
the mere declaration that it is one, subject it to removal
by any person supposed to be aggrieved, or even by the
city itself. This would place every house, every busi-
ness, and all the property in the city at the uncontrolled
will of the temporary local authorities."

On the same subject Wood on the Law of Nuisances
says: "Nor does the power to abate nuisances warrant
the destruction of valuable property which was lawfully

erected, or anything which was erected by lawful authority. It would, indeed, be a dangerous power to repose in municipal corporations to permit them to declare, by ordinance or otherwise, anything a nuisance which the caprice or interest of those having control of its government might see fit to outlaw, without being responsible for all the consequences; and even if such power is expressly given by the Legislature, it is utterly inoperative and void, unless the thing is in fact a nuisance, or was erected or created after the passage of the ordinance and in defiance of it."—Wood on Nuisances, §§ 740-744.

In the case of *Evansville v. Miller*, 146 Ind. 613, 45 N. E. 1054, 38 L. R. A. 161, an ordinance of the city of Evansville, declaring that any building or structure of any kind, partially destroyed by fire, which should be permitted to remain in such condition after notice to remove, repair, or rebuild it, shall constitute a nuisance (without providing any limitations with regard to its dangerous character by reason of its weak condition or location or surroundings), was held void. What was said by the court, in the opinion, is so apposite to the ordinance in the case at bar that we repeat it: "No reference or regard whatever is had as to the condition, character, situation or surroundings, which might tend to render the buildings unsafe in any manner to the public, or a detriment t othe health or inconvenience of the public. There is an entire absence of facts declared tending to show that, if such partially destroyed building is suffered to remain, it may be productive of annoyance or injury to the public. That such a building may become a nuisance, if maintained, by reason of the weak condition of its walls or other parts, thereby rendering them liable to fall and do injury to persons passing by, or resulting in injury to an adjoining owner, is a well-established legal proposition. It is said by an eminent author that such a building as last mentioned, on a public street, is a public nuisance, and a private nuisance to those owning property adjacent to it. It is evident, however, that the nuisance in such a case would consist, not alone in the fact that the build-

ing was one that had been partially destroyed, but in
its being maintained in its unsafe or dangerous condi-
tion.   It may, however, be maintained in a partially de-
stroyed condition, and yet be harmless in all respects;
the unsafe condition thereof depending upon the extent
of the destruction.   *   *   *   But the ordinance does
not take into account any of these facts or features, but
expressly condemns and outlaws as a nuisance the main-
taining of any partially destroyed building, without re-
gard to its character as to danger by reason of its weak
condition or location or surroundings." There are many
cases to the same effect, but a review of them all would
extend this opinion to unnecessary and too great length.
They may be found in the very full note to the case above
quoted from, as reported in 38 L. R. A. 161.   We here
cite some of the most pointed:  *Denver v. Mullen,* 7 Colo.
345, 3 Pac. 693; *Grossman v. Oakland,* 30 Or. 478, 41
Pac. 5, 36 L. R. A. 593, 60 Am. St. Rep. 832, and notes;
*Allison v. Richmond,* 51 Mo. App. 133; *Miller v. Burch,*
32 Tex. 208, 5 Am. Rep. 242; *Shepard v. People,* 40
Mich. 487, 492; *Wade v. Miller,* 188 Mass. 6, 73 N. E.
849, 60 L. R. A. 820; *Town of Lake View v. Letz,*
44 Ill. 81; *Pauer v. Armbrecht,* 72 Wis. 416, 39 N.
14 N. E. 677, 5 Am. St. Rep. 524; *Laugel v. Bushnell,*
197 Ill. 20, 63 N. E. 1086, 58 L. R. A. 266; *Western &
Atlantic Railroad Company v. City of Atlanta,* 113 Ga.
537, 38 S. E. 996, 54 L. R. A. 294; *Harmison v. City of
Lewiston,* 153 Ill. 313, 38 N. E. 628, 46 Am. St. Rep. 893.

There exists a marked distinction between things that
are nuisances per se and things which, though not nuis-
ances per se, may become so by reason of the uses to
which they are put, or by the manner in which the busi-
ness carried on in connection therewith may be con-
ducted.   The distinction is well marked by our own
court.   For instance, it was held in *Rouse & Smith v.
Martin & Flowers,* 75 Ala. 510, 516, 51 Am. Rep. 463,
that a cotton ginnery to be operated by steam was not
a nuisance per se, although erected within 80 feet of a
residence, and in *Town of Greensboro v. Ehrenreich,* 80
Ala. 579, 2 South. 725, 60 Am. Rep. 130, that the busi-

ness of importing, selling, or otherwise dealing in cast-off garments, blankets, bedding, or bedclothes was not a nuisance per se, but that such business might become dangerous by reason of the nature of the previous use, condition, or exposure in respect to contagious or infectious diseases. Consequently, an ordinance making it unlawful for any person "to import, sell or otherwise deal in second-hand or cast-off garments, blankets, bedding, or bedclothes," with a proviso excepting the sale of such articles when not imported, or which have not been used by persons having infectious diseases, was held void. We do not doubt that the authority exists in the town of Cuba, under its charter, to abate as a nuisance anything that falls within the legal notion of a nuisance per se, and to do it in a summary manner; but, in reference to things which are not in their nature nuisances per se, but may become so by reason of their locality, surroundings, or the manner in which they may be conducted, managed, etc., while they may be abated under the power contained in the charter, yet, as was said in *Evansville v. Miller, supra,* "the proper construction of the power in respect to such things, is that the city is clothed with authority to declare, by general ordinance, what shall constitute a nuisance. That is to say, the city may, by such ordinance, define, classify, and enact what things or classes of things, and under what conditions and circumstances such specified things, are to constitute and be deemed nuisances."

In this view, the town of Cuba might declare, by a general ordinance, that seed-houses, kept in such unsanitary condition as some of the evidence for the respondent in this case tends to show was the condition of complainant's houses, should constitute a nuisance, or it might make reasonable regulations as to the manner in which such houses should be kept or conducted, and provide that any house not so kept, should be deemed a nuisance. It cannot be denied that the business of buying cotton seed and erecting and maintaining houses in which to store same while awaiting facilities for shipment is a legitimate business, in which any one may as

of common right engage; nor can it be successfully main-
tained that houses such as are shown in this case are
per se nuisances, even though they may be used for stor-
ing both seed and guano. In other words, the quality
of nuisance does not inhere in the houses; but, if they
are nuisances, they are such by reason of the uses to
which they are put or the manner in which they are
maintained or conducted. The case of *Ferguson v.
City of Selma*, 43 Ala. 398, is easily distinguishable from
the case at bar, in that the charter declared and defined
the character of houses that would constitute a nuisance,
and the complaining parties' house fell within the defi-
nition.

Confessedly, the ordinance in question summarily de-
clares the houses nuisances, whether they are in fact
such or not, and orders their removal, without regard
to the business carried on in them, or the manner in
which it is carried on, or the sanitary or unsanitary con-
dition of the premises on which the houses are located.
The chancellor in his opinion says: "The evidence is
entirely satisfactory in establishing that, if there be any
danger to the health of the community, it can be easily
remedied by building warehouses somewhat tighter, so
that no seed can escape through cracks in the floor, rais-
ing the houses from the ground, and filling in around
them. Had the ordinance been limited to an effort re-
quiring the complainants to conduct a cotton seed and
fertilizer storage business in a manner deemed conducive
to the health of the community, there would be no doubt
that it would have been within the power conferred on
the town by charter." The chancellor reached the con-
clusion, and so decreed, that the ordinance is void.
Without further prolonging this opinion, we have but
to add that, in view of the reasoning employed by this
court in the case of *Town of Greensboro v. Ehrenreich*,
and that employed by eminent judges of the courts of
other states as shown in the cases cited supra, we cannot
escape the conclusion that the ordinance is void, and, of
consequence, that the decrees of the chancellor should
be affirmed.—*Evansville v. Miller and Grossman v. Oak-*

*land, supra; Ex parte O'Leary,* 65 Miss. 80, 3 South. 144, 7 Am. St. Rep. 640;*Frostburg v. Wineland,* 98 Md. 239, 56 Atl. 811, 64 L. R. A. 627.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.