## Llewellyn et al., Appellants, v. Philadelphia & Reading C. & I. Co.

498

Argued May 26, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Muscoe M. Gibson,* with him *J. Mal Gillespie* and *Charles C. Lark* for appellant.—The theory of abandonment on which the nonsuit was granted does not seem to have any authority either in the textbooks, or in the reports.

It is well-settled law that the tenant has the right to use the surface of the land for his mining purposes even to the exclusion of the owner, and it is also well-settled law that the easement of the right to the surface is perpetual. As the counsel for the appellants interpret the law there is no legal way by which the landlord can ever become the owner of the tenants' property left on the premises at the termination of the lease: Russell v. Howe, 30 Pa. Superior Ct. 591.

Both leases which were in evidence established that under the authorities they were a sale of the coal in place: Hosack v. Crill, 18 Pa. Superior Ct. 90; Sturdevant v. Thomson, 280 Pa. 233.

The new suit was improper: Loucheim v. Henszey, 77 Pa. 305; Hill v. Trust Co., 108 Pa. 1; Creachen v. Carpet Co., 209 Pa. 6; Buehler v. Fashion Plate Co., 269 Pa. 428.

The leases in this case were sales of the coal in place. The facts that only certain kinds of coal were named and that there was a limitation of them, does not make the conveyance other than a grant in fee of the coal. The royalty or rents are the purchase money: Robinson v. Pierce, 278 Pa. 372; Hosack v. Crill, 18 Pa. Superior Court 90; Sturdevant v. Thomson, 280 Pa. 233; Lykens Valley Coal Co. v. Dock, 62 Pa. 232; Russell v. Howe, 30 Pa. Superior Court 591; Tiley v. Moyers, 43 Pa. 404.

The main question in this case was whether the property in controversy had been abandoned by the plaintiff. This was to be determined from a consideration of the nature of the property and the conduct of the plaintiff in relation to it, and the question was essentially one of fact for the jury: Russell v. Stratton, 201 Pa. 277;

Sturdevant v. Thomson, 280 Pa. 233; Patterson v. Williams, 52 Pa. Superior Ct. 299.

*J. A. Welsh,* with him *John F. Whalen,* for appellee. —It is clear that it was the intention of the parties that lessees had no right or authority to deposit upon the demised premises anything other than slate, dirt and refuse.

Our appellate courts have repeatedly held that if the conclusion reached by the court is correct disposition of the case, it is immaterial what reasons were given for such action, and the judgment will be sustained, even though some or all of the reasons given might be erroneous: Susong's App., 2 Pa. Superior Ct. 611; Jeannette Plaining Mill Co. v. Greenawalt, 11 Pa. Superior Ct. 157.

At the time of the execution of these leases, all parties knew and fully understood the objects of the demises. They contracted for carrying out a definite purpose, to wit, the digging, mining and preparation of anthracite coal for the market. All knew that slate, dirt, ashes and other refuse were incident to such operation. They desired to provide a place convenient and readily accessible to the mine and breaker, whereon they could cast or throw their waste and useless materials. They made their contract, or lease, with a view of providing such a place: Doster v. Zinc Co., 140 Pa. 147; Reading v. Traction Co., 202 Pa. 571; Nimlet's Est., 299 Pa. 359.

Was there sufficient evidence produced on the part of the defendant to warrant the submission of the case to the jury? We say there was not: Fidelity-Phila. Trust Co. v. Coal Co., 294 Pa. 47; Knauer v. McKoon, 19 Pa. Superior Ct. 539.

There is ample evidence to sustain the finding that, at the time this action was brought in 1922, none of the plaintiffs had any right, title or interest in the said refuse bank: Tozier v. Brown, 202 Pa. 359; Kinter v. Trust Co., 274 Pa. 436; Stevens v. R. R., 278 Pa. 284.

Opinion by Mr. Justice Kephart, June 30, 1932:

The ancestors of appellants in 1873 leased an anthracite coal property for the term of five years. In 1876 this lease was cancelled and a new though similar lease was substituted for it by appellee, who had acquired the premises from the previous owner and lessor. The new lease was for the term of ten years. Both leases gave the lessees the right to "deposit the slate, dirt, and other refuse, either from the breaker or from the mine, in such convenient places as the party of the first part, or their engineer or agents, might direct."

When the first lease was made, there was in existence a large bank where prior operators had deposited refuse from the mine since 1837. Appellants' predecessors, during the thirteen years of their operation, continued to use the same bank. At the expiration of their last lease, or in 1886, the lessees quit the premises and appellee thereafter operated the mine, during which time it continued to cast refuse from its operation over and upon the same bank.

In addition to the refuse and debris, there had also been deposited what was then considered unmarketable and unsalable coal. In 1904, appellee being in possession, reclaimed some of the coal from the bank, and in 1917 continued to reclaim it on a larger scale. Appellants being the heirs of the lessees of 1876, claimed this coal and, in 1922, instituted this action in trespass on the theory that as the title to it was still in them, the action of appellee amounted to a conversion of their property, which was estimated at 1,500,000 tons, of a value of $3,000,000. The court below directed a compulsory nonsuit, and in refusing to take it off stated: "At the time of such deposit, it is clear there was no thought of subsequent reclamation of coal from these banks, and such material, when cast thereon, and as cast thereon, was intentionally and purposely abandoned."

Abandonment includes both the intention and the external act by which the intention is carried into effect;

intention may and indeed often must be inferred from acts. Ordinarily abandonment is a question of fact to be determined by the jury, under all the circumstances of the case. It is only where all the essential facts on which it is based and the inferences drawn therefrom establish the fact with reasonable certainty, free from doubt, that the question can be withdrawn from the jury, and abandonment be declared by the court as a matter of law. See Patterson v. Williams, 52 Pa. Superior Ct. 299. When considering the question of abandonment the nature of the property, and the conduct of the one who claims it, must be given due weight: Russel v. Stratton, 201 Pa. 277.

There is no doubt but that appellants could have recovered the coal if they remained lessees of appellee's property, but at the expiration of their lease, having surrendered the property without reserving or even mentioning any claim to any part of the material left in the bank, under these facts a different question is presented. Appellants and those under whom they claimed not only completely relinquished control, but their acts show an intentional abandonment of that property remaining on appellee's premises. While coal, when severed from the earth, becomes personal property, it may be abandoned as such when it is left on the land of another with the intention of abandoning it. It will be noted that the paragraph reserving the right to deposit slate, dirt, and refuse does not include unmerchantable coal unless it was then considered as refuse and dirt, and when so considered appellants' contention loses much force, for it would seem by the mere act of casting away dirt or refuse they waived any further claim to it.

Here the coal had remained on the premises in the possession of appellee since 1886; during all of the time until the bringing of suit in 1922, these appellants did nothing to assert their right, if they had any. Prior to 1904 they stood by without protest and knowingly permitted appellee to dump the same materials over what

they now claim as their property. In that year appellee, in reclaiming the coal from the bank, asserted a right to the property left by appellants that could not be reconciled with appellants' claim of ownership. It was the notice to them that the appellee claimed to own the coal. Whether the coal in contest be regarded as personalty or realty because of its nature, character and location, is immaterial; appellee's continued, open, notorious, adverse possession of the bank from 1886 to 1922 placed the matter at rest. Appellants' ancestors made no assertion of any right to the bank and exercised no claim to ownership over it and of all persons they should have known what they owned. When they quit the premises, they sold to appellee all of their personal property, which included all the loose coal that had been mined inside the workings. The lessees and their heirs continued the policy of noninterference for forty years while appellee was continuously asserting rights therein. This so conclusively established an abandonment that no jury should have been permitted to guess to the contrary.

We need not discuss the question further as this case is ruled by Fidelity-Phila. Trust Co. v. Lehigh Valley Coal Co., 294 Pa. 47. What is there said controls all the material elements in this case. The cases cited by appellants were clearly distinguished in the Fidelity Case, and they do not have any application to the case at bar. We are not undertaking to decide that a landlord may appropriate the property of a tenant to his own use after the latter moves from the premises.

Judgment of the court below is affirmed.