291 So.2d 295

**Bernard G. QUINNELLY**

v.

**The CITY OF PRICHARD, Alabama, et al.**

**SC 347.**

Supreme Court of Alabama.

March 7, 1974.

Joseph J. Boswell, Mobile, for appellant.

Robert G. Kendall, Mobile, for appellees.

JONES, Justice.

This is an appeal from a final decree of the Circuit Court of Mobile County, in Equity, on February 15, 1973, denying Bernard G. Quinnelly's petition seeking a declaration that his acquittal by the Recorder's Court of the City of Prichard (Respondent-Appellee) of charges of violating a city zoning ordinance constitutes a bar to further prosecutions for the same offense.

The primary issues raised by this appeal are: Does acquittal of a charge of violating a zoning ordinance avail to the accused the defense of res judicata as to subsequent charges of the same offense, although committed at subsequent times, absent intervening circumstances? If so, is the accused, within the context of the facts of this case, entitled to equitable relief by way of injunction against such subsequent prosecutions? We answer both questions in the affirmative and reverse and remand.

In 1952, Quinnelly's predecessor in title, J. W. Lacey, acquired approximately 10 acres of land near Prichard, Alabama. During the late 1950's, Lacey began selling dirt from this land.[1] His first customer was the City of Prichard.

In 1964, the City adopted Ordinance 981 which provided that "if additional territory is annexed to the City at a subsequent date, the land annexed is to be a R-1 (residential single-family) district until and unless changed per the procedure in this ordi-

nance." Article 3, Section F of the ordinance states:

> Subsection 1—"*Continuance.* Any building, billboard, land or structure lawfully existing as a lawful non-conforming use at the effective date of the enactment of this ordinance may be continued except as hereafter provided where such use does not conform with the provisions in this ordinance.
>
> " . . .
>
> Subsection 5—"*Abandonment.* A non-conforming use, other than dwellings, of any number of units in a residential zone which has been discontinued for a continuous period of six months shall not be re-established and any future use shall be in conformity with the provisions of this ordinance."

On September 1, 1967, the City annexed Lacey's 10 acres. At that time, there were numerous other commercial dirt pits within one mile of Lacey's operation. Lacey testified that he sold all the dirt for which he had buyers, but very little dirt was removed from the pit between the mid-1960's and 1971.

Being unsuccessful as a dirt salesman, Lacey sold the 10 acres to Quinnelly, a construction contractor, on March 10, 1971, for the sole purpose of continuing the dirt-pit operation. In fact, within two months, Quinnelly was actively removing dirt from the property. Following numerous complaints and threats of prosecution, Quinnelly applied to the Board of Adjustment of the City for a variance on the use of the property in October, 1971. In January, 1972, his request was denied; and, then, the City began its series of arrests for violation of its zoning ordinance. The dates and status of these are as follows:

On January 27, 1972, and again on February 3, 1972, Quinnelly was arrested. On

---

1. Although this operation is referred to in the testimony (and in this opinion) as a dirt *pit*, it is actually a large *mound* of dirt, containing clay, a foundation substance vital to the construction industry of south Alabama.

March 1, 1972, in the Recorder's Court of the City of Prichard, on a trial on the merits, those two actions were dismissed.

Less than one week later, on March 7, 1972, Quinnelly was again arrested; and on March 27, 1972, in the Recorder's Court, on a trial on the merits, this case was nolle prossed.[2]

On October 19, 1972, Quinnelly was arrested for the fourth time. On the trial of this case, the Recorder's Court found Quinnelly guilty and he appealed.

On the same day as the verdict in the fourth case, i.e., November 15, 1972, Quinnelly was arrested for the fifth time on the same charge.[3] By agreement of the attorneys and the courts involved, awaiting the disposition of the instant litigation, the fourth and fifth prosecutions are still pending.

In denying equitable relief, the Court below stated:

"The Court is not reasonably satisfied from the evidence that the real property in question was lawfully existing as a non-conforming use for the excavation of surface materials of the time said real property became subject to the zoning ordinance of the City of Prichard. The Court finds from the evidence that, had there been a non-conforming use at the time the property became subject to such ordinance, such use was discontinued for a period of more than six months between the time the property became subject to such ordinance and the time Complainant began to use said property for the excavation of surface materials."

Title, 37 §§ 585–586, Code of Alabama 1940, as amended, provides for the exclusive original jurisdiction in the Municipal Recorder's Court to try cases involving a violation of the municipality's zoning ordinance.

In Ashurst v. Preferred Life Assur. Soc. of Montgomery, 282 Ala. 119, 126, 209 So. 2d 403, 408 (1968), it was stated:

"The general principle is well established that an existing final judgment, decree or other final adjudication rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions in the same or any other tribunal of concurrent jurisdiction *on the points and matters in issue and adjudicated in the first suit."*

■ To sustain a plea of res judicata, the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment must be returned on that point. Hall v. Cosby, 288 Ala. 191, 258 So.2d 897 (1972); Bass v. Sanders, 282 Ala. 546, 213 So.2d 391 (1968); Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 179 So.2d 287 (1965); and Ivey v. Wiggins, 271 Ala. 610, 126 So. 2d 469 (1961).

Wilk v. Gillroy, 11 Misc.2d 106, 169 N.Y.S.2d 473 (1957), held:

" . . . under the principle of res judicata which controls the parties . . . no other prosecution may be instituted against this petitioner by reason of these very same violations . . . .

"The persistence of this deputy commissioner, the building department and its inspectors in subjecting petitioner to the institution of criminal prosecution, despite the previous adjudication, is a vi-

---

2. The fact that each of the first three cases resulted in judgments of acquittal, despite the use of the terms "dismissed" and "nolle prossed," is not seriously contested. See Lynn v. State, 31 Ala.App. 216, 14 So.2d 259 (1943), and Melton v. State, 30 Ala.App. 136, 1 So.2d 920 (1941).

3. For the purpose of clarity, it should be noted that each of the five charges alleged a different date and a separate act of removing the dirt as constituting the offense of violating the zoning ordinance.

olation of petitioner's rights and the Supreme Court has the power to enjoin such disregard of the citizen's rights, and to give prompt relief . . ."

■ The doctrine of res judicata is applicable to criminal and quasi criminal as well as civil cases. Mitchell v. State, 140 Ala. 118, 37 So. 76 (1903), and Jay v. State, 15 Ala.App. 255, 73 So. 137 (1916).

■ The legal effect of the trial Court's decree was to afford the City a trial de novo on appeal from the three prior judgments of acquittal, or, perhaps more accurately stated, to permit the City to attack collaterally that which was unavailable to it by way of appeal. We hold that the trial Court was legally bound to give res judicata effect to the prior judgments of acquittal and that any findings contrary thereto were erroneous.

The City next contends that, assuming the res judicata effect of the acquittals, the judgment below is due to be affirmed because it is supported by other competent evidence, i.e., more than six months elapsed between the accused's acquittal of March, 1972, and his arrest and conviction of October, 1972, during which time no excavation on the property occurred. Otherwise stated, the City says that the Trial Court was justified in denying relief since it could have found from the evidence that Quinnelly himself had effected an abandonment of the non-conforming use by his own disuse of the property between March and October of 1972.

To be sure, if one strains at the record, there is the barest scintilla, which may be gleaned from the testimony of one Mrs. Wilson, to the effect that she did not see any dirt hauled from this property during this 6½ month period. Her testimony in this respect stands alone and is against the great preponderance of the evidence. However, without invoking the "preponderance of the evidence" or the "palpably wrong or manifestly unjust" rules of re-

view (Renfroe v. Weaver, 285 Ala. 1, 228 So.2d 764 (1969) ), we will treat this testimony as having been accepted by the Trial Court as competent and worthy of belief.

Mrs. Wilson's testimony raises the question of whether or not the 6½ month period during which Quinnelly allegedly hauled no dirt constituted abandonment or discontinuance.

■ This Court stated in Board of Zoning Adjustment v. Boykin, 265 Ala. 504, 92 So.2d 906 (1957):

"The courts have generally held that the word discontinuance, as used in a zoning ordinance, is equivalent to abandonment."

Discontinuance or abandonment involves more than mere cessation. It results from the concurrence of two factors: (1) An intent to abandon and (2) some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. See Green v. Copeland, 286 Ala. 341, 343, 239 So.2d 770 (1970); Board of Zoning Adjustment v. Boykin, supra; Vol. 14B, Code of Alabama 1940, as amended, Appx., § 982, p. 873; and 18 A.L.R.2d 728, § 4, Elements of Abandonment.

Green v. Copeland, supra, citing Rathkopf, Vol. 2, Chapter 61, § 5, stated:

" 'A temporary cessation [to devote property to a non-conforming use], even for a lengthy period, caused by circumstances over which the property owner had no control, is generally held not to constitute proof of a discontinuance in the sense of abandonment . . . since the circumstances themselves negate an inference of the necessary intention to abandon the use.' "

■■ Stated otherwise, a temporary interruption of the non-conforming use without substitution of a conforming use or

without a definite and substantial departure from previous existing conditions caused by accident or unpropitious circumstances does not terminate the right to resume the non-conforming use. 18 A.L.R. 2d 728, § 13, Temporary Suspension of Non-Conforming Use, p. 745.

Dorman v. Mayor and City Council of Baltimore, 187 Md. 678, 51 A.2d 658 (1947), explained that it is only to avoid injustice that zoning ordinances generally except existing non-conforming uses and that, therefore, the public effort is not to extend such non-conforming uses, but rather to permit them to exist as long as necessary and then to require conformity for the future.

Applying these principles to the instant case, we conclude that the combination of two distinct circumstances requires a rejection of this abandonment contention:

■ First, this six-month period commenced with the disposition of the trial of the third charge for the same alleged violation coupled with threats of continuous arrests and trials.

Second, the city building inspector, who signed each of the formal charges, gave uncontradicted testimony that this property in the status existing during the period in question was totally unfit and unsuitable for R–1 purposes, and that the only way it could be transformed from a non-conforming use (or from its present status) to a conforming use was to remove the remainder of the dirt above the street level—the very act for which Quinnelly was arrested. These combined circumstances produce the anomaly whereby the City in effect is saying to Quinnelly: "Until you remove the remainder of the dirt mound, we realize that you cannot comply with the conforming use prescribed by the zoning ordinance; but if you remove the dirt, we will arrest and try you for violating such ordinance."

We hold, therefore, that mere non-use of this property under these circumstances, as a matter of law, could not have constituted the necessary element of intent to effect an abandonment of the non-conforming use.

■ Moreover, the law prohibits the enforcement of zoning regulations where the effect of such enforcement constitutes an effective taking, or the confiscation, of private property as violative of the long and well-established public policy expressed in the constitutional prohibition against taking of property without due process. Constitution of Alabama 1901, Art. 1, § 13. See Anderson, Law of Zoning, § 2.22 (1968); see also Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553 (1948).

■ Finally, the City contends that the decree is due to be affirmed on the principle that equity will not ordinarily enjoin criminal prosecutions and this for the reason that the accused has an adequate remedy at law through the assertion of defensive matters in the trial of the criminal case. We not only agree with this basic legal proposition, but we further recognize that injunctions are rarely a matter of right and that the broadest discretion is vested in the trial judge when such relief is sought.

After recognizing these principles, Justice Haralson, speaking for this Court in Bryan v. Mayor and Aldermen of City of Birmingham, 154 Ala. 447, 450, 45 So. 922, 923 (1908), stated:

"Applying this rule, the courts should not lose sight of the fact, that a court of equity can and should interfere by injunction to restrain any act or proceeding, whether connected with crime or not, which tends to the destruction or impairment of property or property right.—5 Pom. 635; Austin v. Austin, 87 Tex. 330, 28 S.W. 528, 47 Am.St.Rep. 114; Atlanta v. Gate City Co., 71 Ga. 106; Deems v. Mayor of Baltimore, 80 Md. 164, 30 A. 648, 26 L.R.A. 541, 45 Am.St.Rep. 339."

Answering arguments similar to those raised by the City in the instant suit relative to the lack of power of an equity court to enjoin quasi criminal prosecution, Justice Sayre, speaking for the Court in Board of Commissioners City of Mobile, et al. v. Orr, 181 Ala. 308, 318, 61 So. 920, 923 (1913), stated:

"But this court has with equal clearness recognized the power and duty of the equity courts to interfere by injunction where quasi criminal prosecutions under municipal ordinances will destroy or impair property rights. Brown v. Birmingham, supra [140 Ala. 600, 37 So. 174]; Bessemer v. Bessemer Water Works, 152 Ala. 391, 44 So. 663; Bryan v. Birmingham, 154 Ala. 447, 45 So. 922, 129 Am. St.Rep. 63; Town of Cuba v. Mississippi Oil Co., 150 Ala. 259, 43 So. 706, 10 L.R.A., N.S., 310; Mobile v. L. & N. R. R. Co., 84 Ala. 115, 4 So. 106, 5 Am. St.Rep. 342; Montgomery v. L. & N. R. R. Co., 84 Ala. 127, 4 So. 626."

■ We are constrained in this instance to hold that the law (the principle of res judicata) is so well settled, the facts so overwhelming, the remedy at law so woefully inadequate, and the impairment of property rights so grievous and irreparable that the property owner, Complainant, is entitled to an injunction as to all pending prosecutions for violation of the zoning ordinance. 42 Am.Jur.2d, Injunctions, § 244, Multiplicity of, and vexatious, arrests and prosecutions, p. 1033. He is not, of course, entitled in the instant suit to injunctive relief as to any future prosecutions which may involve intervening circumstances materially different from those now before us.

Reversed and remanded with instructions to enter an order consistent with this opinion.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, and McCALL, JJ., concur.