Floyd S. Milford filed this detinue action for the return of certain personal property held by Appellees, Tennessee River Pulp and Paper Company and Lander G. Beasley. This action was consolidated for trial with a declaratory judgment action subsequently filed by C.O. May against these same Defendants. The trial Court, sitting without a jury, found for both Tennessee River and Beasley, and entered judgment pursuant thereto. We affirm.
The facts leading to these suits are somewhat involved and require preliminary recitation. Wood-Burleson Coal Company, as fee owners, installed a coal washing operation upon the land in question. It maintained this equipment for twelve years before selling the surface estate to Tennessee River in 1960.
In 1962, Wood-Burleson conveyed the mineral estate to May, who used the washer operation (consisting of a washer, tipple, scales, two settling ponds and various other items) in conjunction with his mineral interests. May sold this washing equipment and leased his mineral rights to Beasley in 1968. Approximately one year thereafter, on August 15, 1969, Beasley agreed to sell the screening and washing concern to Milford. (Though the details of this agreement are *Page 689 
in dispute, it is not an issue presently before the Court.)
The settling ponds have been used as such from the time Wood-Burleson operated the washing process. They have not been mentioned, however, in any sale of the operation or conveyance of the surface or mineral estates.
Milford, doing business as M. M. Coal Company, used the washing operation to clean coal brought from other locations. Because he considered the property to be "lost land," he never instituted a title search concerning the surface estate. Moreover, he never paid rent to the surface owner, though an agreement to this effect was requested by agents of Tennessee River on several occasions.
Due to physical infirmities, Milford discontinued the business in 1972. This suit was filed when Beasley and Lee West, pursuant to a lease with Tennessee River, entered upon the property, began extracting coal from the settling ponds, and allegedly used personal property belonging to Appellant.
The trial Court held that Milford could recover his personalty located on the property, but permitted Beasley and West to reclaim the coal from the settling ponds pursuant to their lease agreement. All pieces of equipment attached to the realty were found to be fixtures and, thus, were awarded to Tennessee River as surface owner.
Milford raises two primary contentions on this appeal. First, he asserts that the coal in the settling ponds is personalty and, as such, belongs to him. Secondly, he insists that the washer, tipple and scales are not fixtures but are merely personalty. Even should this Court hold such property to be fixtures, he contends, they should be deemed trade fixtures which should also be recoverable.
It is well settled that minerals unsevered from the soil, lying in place, are part of the freehold. When such minerals are severed from the soil, however, they become personalty.Forbes v. Gracey, 94 U.S. 762, 24 L.Ed. 313 (1876); AldrichMining Co. v. Pearce, 169 Ala. 161, 52 So. 911 (1910); Williamsv. Gibson, 84 Ala. 228, 4 So. 350 (1887); and 58 C.J.S. Minesand Minerals § 133. Therefore, the coal processed through this washer operation had become the personalty of the mineral estate owner.
Milford contends that it is inconsistent to allow him to recover his other personalty, while not permitting recovery of the coal refuse. This, however, is fallacious because, whereas there was no abandonment of his other personal property, the refuse is merely abandoned personalty.
A determination whether certain personalty is abandoned stems from a consideration of the nature of the particular property, the intent to abandon, and some external act evidencing this intent. Quinnelly v. City of Prichard, 292 Ala. 178,291 So.2d 295 (1974); and Alabama Power Co. v. Daily, 31 Ala. App. 441,18 So.2d 142 (1944). It is from the party's conduct, then, that his intent may be discerned. Llewellyn v. Philadelphia Reading Coal Iron Co., 308 Pa. 497, 162 A. 429 (1932).
Though ordinarily there exists a presumption that one does not intend to abandon his property, this presumption is not attendant where the article claimed to have been abandoned is generally considered valueless. Fidelity-Philadelphia Trust Co.v. Lehigh Valley Coal Co., 294 Pa. 47, 143 A. 474 (1928). In the case at bar, Milford admits he considered the coal valueless and that all purchasers had refused future shipments of it. Moreover, prior to Beasley's and West's occupancy, no one had used the ponds for several years. (Unlike the coal refuse, the washing operation and equipment were locked and obviously not abandoned.) Therefore, the Court properly held that the coal refuse was abandoned property. As such, it could be legally appropriated by Tennessee River. See Llewellyn, supra; Fidelity, supra.
Appellant's second contention is also without merit. A "fixture" is "`an article which was once a chattel, but which, *Page 690 
by being physically annexed or affixed to the realty, has become accessory to it and part and parcel of it.'" Farmers Merchants Bank v. Sawyer, 26 Ala. App. 520, 522, 163 So. 657,658 (1935). It is only from an examination of the circumstances of each case that doubt may be resolved as to whether a certain item is a fixture. Criteria for this determination include:
 "(1) Actual annexation to the realty or to something appurtenant thereto; (2) Appropriateness to the use or purposes of that part of the realty with which it is connected; (3) The intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred; (a) From the nature of the articles annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made." Langston v. State, 96 Ala. 44, 46, 11 So. 334, 335 (1891).
See also Walker v. Tillis, 188 Ala. 313, 66 So. 54 (1914); and 35 Am.Jur.2d, Fixtures, § 4.
In the case before us, the first two requirements have obviously been fulfilled. The washer equipment is set into concrete and permanently attached to the realty. The process is particularly appropriate for this land in that the property itself is coal producing. Furthermore, extensive strip-mining is conducted in the area.
The final requirement, however, is in dispute. Intent to affix property to the realty may be express or implied; but where a building or other structure has been voluntarily erected, such intent is presumed. North British MerchantileInsurance Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764 (1951);Sullivan v. Lawler, 222 Ala. 628, 133 So. 911 (1931); and 35 Am.Jur.2d, Fixtures, §§ 35, 78, and 82.
Though the determination of whether an article is a chattel or a fixture is a mixed question of fact and law, the trial Court clearly ruled correctly in this case. The property is of such nature that permanent affixment must certainly have been originally intended. Furthermore, the equipment has been attached and in place for well over twenty years. The only inference properly drawn from this evidence is that the pieces of equipment, so annexed to the realty, are fixtures.
Thus viewed, we must now determine one final point in controversy. Milford contends that he was either a licensee or a tenant at will and, as such, is entitled to remove trade fixtures attached during his tenancy. If we hold that Milford attained such status, his assertion is correct. See Walker, supra; Poole's Case, 1 C. 368 (1703); and 35 Am.Jur.2d,Fixtures, § 39. It is this assertion as to Milford's status, however, with which we disagree.
Milford was under no lease or sale agreement with Tennessee River. He neither sought nor obtained permission to remain on the land. Furthermore, Tennessee River, through its agents, consistently opposed his rent-free possession. Therefore, because occupancy must be permissive before one may be considered a licensee, Milford cannot be deemed to have attained this status. See Messer v. City of Birmingham,243 Ala. 520, 10 So.2d 760 (1942); and Hicks Brothers v. SwiftCreek Mill Co., 133 Ala. 411, 31 So. 947 (1902). The mere fact that no suit is brought by the true owner does not create a tenancy relationship, nor elevate a trespass to a tenancy at will. From the evidence presented, Milford must be deemed a trespasser. See Alexander v. Letson, 242 Ala. 488, 7 So.2d 33
(1942); and Foust v. Kinney, 202 Ala. 392, 80 So. 474 (1918).
As a trespasser, one has no claim to fixtures attached to the realty of another. See North British, supra; Worley v. Ehret,36 Ill. App.3d 48, 343 N.E.2d 237 (1976); Titus v. Poland CoalCo., 275 Pa. 431, 119 A. 540 (1923); 35 Am.Jur.2d, Fixtures, § 82, and 36A C.J.S. Fixtures § 25.
 "It is . . . true generally, that if there is a tortious entry upon lands, and the tortfeasor makes improvements upon *Page 691 
them, annexed to the soil, for the better use and enjoyment of the lands, such improvements become a part of the realty; all property in them is vested in the proprietor of the soil, who is under no legal or equitable obligation to make compensation for them, or to suffer them dissevered and removed." Jones v. New Orleans and Selma Railroad Company and Immigration Association, 70 Ala. 227, 231 (1881).
Both questions raised concern a mixture of fact and law. As such, a presumption of correctness attends the decision of the trier of fact. Ford v. Washington, 288 Ala. 194, 259 So.2d 226
(1972); and 5A C.J.S. Appeal and Error §§ 1642, 1647. Because no error is manifest upon the record, the judgment of the trial Court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.