This was an action to set aside a 1971 deed on the ground of forgery. The lower court entered an order 1) dismissing the complaint and 2) dismissing the counterclaim and cross-claim as moot. We reverse and remand.
Samuel Myer Jacoby, by and through his mother and next friend, Mary F. Jacoby, brought this action to set aside an allegedly forged deed. The warranty deed, purportedly executed in 1971 by his parents, Sam and Mary F. Jacoby, and his uncle, Rudolph Jacoby, gave title in certain valuable real estate to defendant, E.P. Bell.
In 1973 Sam and Mary F. Jacoby were divorced. In the preceding litigation the deed's validity was disputed but, at least between those parties, put to rest in favor of the document's authenticity.
Sam Jacoby died in 1976 leaving the minor plaintiff as his heir. The mongoloid child is in the custody of his mother and next friend, Mary F. Jacoby.
After this action was instituted against defendant Bell, First Southern Federal Savings and Loan Association (First Southern) intervened as Bell's mortgagee of the property. The plaintiff amended his complaint to add as defendants First Southern and also Christine W. Hammonds, Administratrix of Sam Jacoby's estate. Thereafter First Southern filed a counterclaim and cross-claim praying that the plaintiff and cross-defendant, Hammonds, be made to execute conveyances of the subject property.
After discovery the case was tried and on September 20, 1978 the complaint was dismissed and the plaintiff timely filed his notice of appeal.
The dismissal with prejudice of this plaintiff's complaint operated under Rule 41 (b), ARCP as an adjudication upon the merits. Therefore in reviewing the trial court's disposition of this case we must determine, as in any other non-jury judgment, whether the dismissal was supported by the evidence. SeeStrickland v. Nat'l. Gypsum Co., Ala.Civ.App., 348 So.2d 496
(1977); Long v. Cone, 542 F.2d 751 (8th Cir. 1976).
The defendants/appellees argue that our determination must be governed by two very substantial presumptions. The first presumption is that in favor of the validity of an acknowledged instrument. In Thompson v. Mitchell, Ala., 337 So.2d 1317
(1976), this Court citing Chapman v. Turner, 255 Ala. 423,51 So.2d 867 (1951), stated that
 One seeking to have a deed declared invalid must show by clear and convincing evidence the facts relied upon to demonstrate the invalidity; and that party seeking to have the deed set aside bears the burden of proof. . . .
Although the trial court did not make written findings of fact which Rule 41 (b), ARCP hints would be helpful in such a case, it is apparent that the trial court was not convinced the plaintiff met this burden. The defendants argue that this conclusion is bolstered by the second presumption they urge upon us, that of Hill v. Delchamps Food Stores, 294 Ala. 14,310 So.2d 871 (1975):
 [W]here the record shows that a case is tried by the court, without a jury, and judgment rendered absent special findings of fact, or a request therefor, the conclusion of the trial judge will be affirmed unless clearly erroneous, or manifestly unjust, if fairly supported by credible evidence under any reasonable aspect. . . .
From a review of the record we hold that the evidence presented by the plaintiff did indeed overcome the first presumption and show forgery with the required clarity. So too the second presumption must fall. The *Page 280 
rule of Hill, supra is not irrebuttable. Where the conclusion of the trial court is so opposed to the weight of the evidence that the variable factor of witness demeanor could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed. This, as the evidence below will illustrate, is the case sub judice:
The plaintiff's next friend, Mrs. Mary F. Jacoby, testified that she had not signed, nor had she authorized anyone to sign her name to, the alleged deed or any other deed when she was married to Sam Jacoby, although the deed was dated while they were married. Further, she testified that she was familiar with the signature of Sam Jacoby having seen it hundreds of times, and the signature on the deed was not that of Sam Jacoby.
Mr. Lamar Miller was then brought to the stand as a handwriting expert. He testified that his training in handwriting identification and questioned documents was obtained at a one-year training school in Georgetown University, Washington, D.C. and that he had done considerable work in handwriting identification for law enforcement as well as testifying in state and federal court for some five years. Mr. Lamar stated that by comparing known samples of handwriting with handwriting under question a trained examiner of questioned documents could determine the authenticity of the questioned signatures. He further testified:
 Q [Mr. Wilkins] What other signatures of Sam Jacoby and/or Mary Frances Jacoby did you use to compare the signatures of those two individuals that you have depicted up there as being the signatures on the deed in question?
 A [Mr. Miller] I examined about seven or eight signatures of Sam Jacoby, plus other examples of his writing.
. . . . .
 Q Were there any differences in those signatures and the signature here?
A Yes, sir. There are a number of differences.
Q Would you point those differences out to the Court?
 A The primary difference, of course, is that the slant of the handwriting — the slant on the deed is more upright. In some cases it appears to be slanted slightly to the left, whereas in the known standards of Sam Jacoby the handwriting slants to the right. Forehand slant is fairly constant. There are also differences in the actual formation of the letters — the way they rest on the line and also the way they relate to each other. This is a closer view of the first sample as it appears on the deed and also the name "Sam" as it appears on the return address. One of the most obvious differences is the manner in which the letter "s" is formed in the known handwriting. In the known handwriting the letter "s" is slanted left to right.
 Q How were the other signatures, in-so-far as the "s" is concerned, in comparison with the "s" with the dot beside it?
 A All the known signatures are consistent with the known signatures. They are totally inconsistent with the signature of the deed.
 Q In your professional opinion would you say that is a slight difference?
 A No, sir. I do not consider that a slight difference. I consider it a significant difference.
 Q Would you point out any other features you consider to be contrary to the signature beside the red dot?
 A The last name "Jacoby" begins with the letter "J." Mr. Jacoby's "Js" are quite consistent. Large bottom, loop and short top loop, and squared at the top, and is consistent with his known signatures. The "J" on the deed is not consistent with the known signature of Sam Jacoby. The "J" is rather uniform in the top and bottom loops and doesn't contain this bottom loop and the top is not the same.
Q Any other features you want to point out?
 A Well, the "b" in the word "Jacoby" in the deed, the questioned material, is slanted or more upright in nature, whereas *Page 281 
in the known handwriting standards it slants towards the right. The terminal "y" stroke slants more to the right in the signature from the deed, whereas in the known signature it slants more to the left. There are also other differences throughout, but these are the most glaring differences you can see.
 Q Were these documents you compared executed along about the same time as this deed?
 A I would have to check the dates. I think this Sam Jacoby from the Sears account is several years older than perhaps some of these other signatures.
Q These all follow the same pattern, do they not?
 A Yes. I have some as old as in the mid thirties, and they are consistent with that we are seeing here from the 1970s.
 Q Would you put up on that slide Mrs. Jacoby's signatures?
 A The bottom signatures on the slide that we are viewing right now are known signatures of Mrs. Sam Jacoby. The top signature with the red dot, once again, is the Sam Jacoby signature from the deed in question. And you can see that there are differences in the execution of the Sam Jacoby signature on the deed and Mrs. Sam Jacoby. The difference in the "s" once again. . . .
 Q Let me interrupt you, if you don't mind. Go on to the slide where she signs her given name and married name.
A This is it.
Q Point out the differences there.
 A The signature at the top is the Francis Jacoby signature from the deed in question. The bottom is Mary F. Jacoby's signature. And there are obvious differences between the questioned signature and the known. The slant is different. The signature slants further to the right on the top than the bottom or the known signature. There is a difference in the "J" in the Jacoby name from the "J" used in the Frances or Mary F. Jacoby signature.
 Q How many signatures of hers did you use to compare and what instruments did you use to take those from?
 A The signatures on this slide are from checks, and I examined probably eight to twelve of her known signatures also off of checks and various documents executed in the normal course of business.
On cross-examination, Mr. Lamar admitted that all of the known signatures of Mrs. Jacoby were signed Mary F. Jacoby and that these were compared with the questioned signature of Frances Jacoby.
On redirect-examination Lamar was asked his opinion based upon his education and background and experience and work on this particular deed on whether the signatures of Sam Jacoby and Frances Jacoby are the actual signatures of these people?:
 A [Mr. Miller] It's my opinion that the Sam Jacoby signature on the deed in question was not written by Sam Jacoby, the author of the standards, and the Frances Jacoby on the deed in question was not written by the author of the signatures as the known Mrs. Jacoby.
On re-cross the witness was shown for the first time a check purportedly endorsed by Sam and Rudolph Jacoby and asked to examine it:
 Q [Mr. Owen] All right, sir. Now, just from that short examination do you have an opinion as to who endorsed this check — whether or not Sam Jacoby endorsed that check?
 A [Mr. Lamar] I'm just not going to make an examination on the witness stand. If you want me to take it back and examine it. . . .
Q You cannot make one?
A Not in this short length of time.
 Q That is what I'm asking you. You don't have an opinion, is that correct?
A That's right.
At this point Mrs. Jacoby was recalled to the stand by the plaintiff and testified that she signs her name, Mary F. Jacoby, not Frances Jacoby. On cross Mrs. Jacoby agreed with counsel that the name on the deed was "Francis" but she does not spell her name with an "i."
The defendants then presented their case: *Page 282 
Appellee Bell, the grantee, testified that he was present and witnessed Sam Jacoby sign the deed in question. He, however, could not identify the appellant's next friend Mary F. Jacoby as the woman who signed the deed with Sam Jacoby.
Rudolph Jacoby, the brother of the deceased Sam Jacoby, when asked whether the signature, "Sam Jacoby," written on the deed appeared to be that of his dead brother, stated "I imagine so." On cross-examination, however, the following exchange took place:
 Q [Mr. Wilkins] You don't know whether Sam signed this deed or not, do you?
 A [Rudolph Jacoby] I don't remember that. But he didn't have to sign no deed for me to sell the property.
Q Who signed Sam's name?
A I don't know.
Q Who signed Mrs. Jacoby's name?
 A I don't know. The fact is I never saw her in the case at all.
Q She wasn't there the day you signed, was she?
A No.
The attorney in whose office the closing took place stated his belief that the persons present at the execution of the deed were the signatories, Mary Steirs (now Mrs. Mary McGuff) who was his secretary, Mr. E.P. Bell and himself. When asked however if he saw each of the gentlemen (Rudolph and Sam Jacoby) sign the deed, he answered "Mr. Owen, I don't have an independent recollection where I can say I saw Mr. Whoever — Mr. Sam Jacoby or Mr. Rudolph Jacoby sign it at that time at that place." Still later on direct examination the following exchange took place:
Q [Mr. Owens] Did you know Mrs. Frances Jacoby?
 A [By the attorney] I can't say that I do. I thought I did.
Q Is that the lady sitting here at this table?
 A I can't say. I honestly can't say that right now I remember what either Rudolph or Sam Jacoby looked like.
Q But you did know them at that time?
A Yes sir.
Mrs. Mary C. McGuff (formerly Mary C. Steirs) testified that she worked for the lawyer at the time of this transaction and identified her signature as that of the Notary Public on the deed in question. She testified that it was office procedure that the signatories be there for her to acknowledge it. She stated thereafter however that she had no personal recollection of the transaction. On cross-examination the record shows the following:
 Q [Mr. Wilkins] They didn't have any other identification they showed you, I assume, that you would recall since you have told Mr. Salmon the circumstances under which you took this acknowledgement?
A [Mrs. McGuff] That's right.
 Q They didn't show you any separate identification, did they?
A No. We didn't require any.
Because of our holding above we need not discuss the plaintiff's contentions of further error.
Defendant First Southern argues in effect that the 1973 divorce action between Sam and Mary F. Jacoby put to rest the issue of the deed's validity and thus the bar of res judicata supports the trial court's action in dismissing the complaint independent of the weight of other evidence. We disagree. InQuinnelly v. City of Prichard, 292 Ala. 178, 291 So.2d 295
(1974), this Court stated the elements which must be met to establish such a bar:
 To sustain a plea of res judicata the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment be returned on that point. [citations omitted]
In this case the threshold requirement of same parties is missing. Therefore this argument is untenable.
Pursuant to our holdings above the judgment must be reversed and remanded for *Page 283 
further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.