Before 1996, William B. Garrett owned and operated an automotive-service business known as Garrett Auto Save. In 1996, Garrett retired and closed his business. On April 12, 1996, he agreed to sell the real property on which the business was located to Sonic Restaurants, Inc. The closing took place on July 8, 1997.
Sonic purchased the property to construct a drive-in restaurant on the site and hired Horizon Industries of Fort Worth, Texas, as the general contractor. Horizon subcontracted the site-preparation work — including demolition of the existing building, grading, and debris removal — to Valley Sand and Gravel, Inc.
Valley Sand began work on July 9, 1997, the day after the closing. Wayne Taft, the president and sole stockholder of Valley Sand, noticed that there was some equipment inside the building on the premises and asked officials at Horizon what to do with it. After checking with officials at Sonic, a Horizon representative told Taft, "[W]e don't care what you do with it. You have a deadline to keep. Get rid of any and everything on the property." Taft asked two acquaintances — Don Riley of Riley Heating and Air Conditioning Company and William Fuller of Phenix Firestone, an automotive-service business — to come to the property before the building was demolished, to see if they wanted any of the equipment. Riley and Fuller went to the site and removed various items of equipment, including a central heating and air-conditioning system and a vehicle-alignment apparatus.
Garrett came to the premises the next day, July 10, to retrieve some of his personal property, and he saw that the equipment was missing. He immediately contacted the police department to file a theft complaint; eventually, he sued both Sonic and Valley Sand, alleging that they had converted items of his personal property worth over $17,000.
The trial court entered a summary judgment in favor of Sonic, and the case against Valley Sand was tried to a jury. At the close of all the evidence, the trial court entered a judgment as a matter of law in favor of Valley Sand. Garrett appealed to the Alabama Supreme Court, and that court transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975. Although the trial court did not state the basis for its judgment, we conclude that the judgment was correct for two reasons.
First, many of the pieces of equipment attached to the realty were fixtures and, therefore, not subject to conversion.
 "An action for conversion will not lie for the taking of real property, Faith, Hope and Love, Inc. v. First Alabama Bank, 496 So.2d 708, 711 (Ala. 1986), nor *Page 602 
will it lie for the taking of personal property that has been incorporated into real property. Hatfield v. Spears, 380 So.2d 262, 265 (Ala. 1980). Kemp Motor Sales v. Lawrenz, 505 So.2d 377, 378 (Ala. 1987)."
Baxter v. SouthTrust Bank of Dothan, 584 So.2d 801, 805 (Ala. 1991).
 "A `fixture' is an article that was once a chattel, but which, by being physically annexed or affixed to realty, has become accessory to it and `part and parcel of it.' Milford v. Tennessee River Pulp Paper Co., 355 So.2d 687 (Ala. 1978)."
Ex parte Brown, 485 So.2d 762, 764 (Ala.Civ.App. 1986). A central heating and air-conditioning system is generally considered a fixture attached to the realty, see Silverman v. Mazer Lumber Supply Co., 252 Ala. 657,42 So.2d 452 (1949); Annot., Air-conditioning appliance, equipment, orapparatus as fixture, 69 A.L.R.4th 359 § 9 (1989), and not the subject of conversion, see Milford v. Tennessee River Pulp Paper Co.,355 So.2d 687 (Ala. 1978).
We express no opinion as to whether the vehicle-alignment apparatus was also a fixture. Assuming, however, that it and the other pieces of equipment removed from the site were not fixtures, the judgment was, nevertheless, correct.
 "A plaintiff cannot recover in an action of trover unless at the time of the conversion, he or she had a general or special right to the property and possession or an immediate right of possession."
Kemp Motor Sales, Inc. v. Lawrenz, 505 So.2d 377, 378 (Ala. 1987) (emphasis added). After the real estate closing on July 8, Garrett had neither possession, nor an immediate right to possession, of his equipment because it was situated on realty belonging to Sonic. Paragraph 16 of the Real Estate Purchase Agreement provided:
 "On the Closing Date [Garrett] shall deliver exclusive possession of the Property to [Sonic] coincident with the closing, free, clear and discharged of possession or use and the right of possession or use by any and all entities, and released of any and all dower, curtesy, and homestead rights."
After the closing, Garrett could not have entered the realty to take possession of any personal property left there, without becoming a trespasser. See Milford v. Tennessee River Pulp Paper Co., 355 So.2d at 690.
 "There is no authority in the law for taking and carrying away even one's own [personal] property through the commission of a trespass upon the [real] property — possessory or by title — of another."
Milner v. Milner, 101 Ala. 599, 603, 14 So. 373, 374 (1893).
The appellee's request for an attorney fee on appeal is denied.
The judgment of the circuit court is affirmed.
AFFIRMED.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur.